480 A.2d 966

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**John IANNACCIO, Appellant.**

Supreme Court of Pennsylvania.

Argued March 9, 1984.

Decided June 21, 1984.

416

418

John H. Corbett, Jr., Public Defender, Mitchell A. Kaufman, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Dara A. DeCourcy, Asst. Dist. Atty., Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## ORDER

PER CURIAM.

The Court being evenly divided, the Order of the Superior Court is affirmed.

PAPADAKOS, J., did not participate in the consideration or decision of this case.

ZAPPALA, J., filed an Opinion in Support of Affirmance in which McDERMOTT and HUTCHINSON, JJ., joined.

NIX, C.J., filed an Opinion in Support of Reversal.

LARSEN, J., filed an Opinion in Support of Reversal in which FLAHERTY, J., joined.

## OPINION IN SUPPORT OF AFFIRMANCE

ZAPPALA, Justice.

At issue in this appeal is the propriety of an order of the Court of Common Pleas of Allegheny County directing the Commonwealth to produce a confidential informant *in camera*. The Superior Court permitted the Commonwealth to appeal the interlocutory order pursuant to 42 Pa.C.S. § 702(b) and Pa.R.A.P. 1311(b), and reversed, 304 Pa.Super. 307, 450 A.2d 694 (1982).

The Appellant, John Iannaccio, was arrested and charged with several possessory offenses involving controlled substances, 35 P.S. § 780–113(a)(16), (30), and (31), and firearms, 18 Pa.C.S. § 6105, following a search of his residence in Pittsburgh. The search was conducted pursuant to a warrant obtained by two detectives of the Pittsburgh police force on the morning of August 15, 1978. In their warrant application the detectives set forth the following as supporting their probable cause belief:

Affiants received information from a confidential reliable informant that John Iannaccio[,] Jr. aka Jack was dealing and concealing LSD from the above described premises. Informant stated that he was in the premises within the past 24 hours and did observe Jack sell LSD to an

unknown white female, who appeared to be around 16 yrs[.] old. Informant stated that Jack was charging $3.00 apiece for the LSD. Informant stated that he oberved [sic] several small tablets which Jack stated that he was going to sell for $3.00 apiece, but would sell them cheaper if the buyer bought in quanity [sic].

Informant has proven to be reliable by giving information which has led to the arrest and conviction of James Payne[,] jr. [sic], Darryl Robinson and Gregory Beal all for VCSSDCA, [sic] The most recent conviction being that Beal [sic] in June of 1978.

■ On November 13, 1978, the Appellant's counsel made an informal request for discovery pursuant to Pa.R.Crim.P. 305 A. Among the information and materials sought was the identity of the informant (referred to in the warrant application). Upon the Commonwealth's refusal of this portion of the request, the Appellant filed a motion for relief under Pa.R.Crim.P. 305 A, asking the court to "prohibit the District Attorney from introducing at time of trial, as evidence, those items and information not disclosed ... or, in the alternative, such order as the [court] deems just under the circumstances." This motion was denied. After filing an omnibus pretrial motion to suppress the evidence seized pursuant to the warrant, the Appellant presented a motion for reconsideration of his discovery request, asking the court to order disclosure of the informant's identity "to afford [the Appellant] an adequate opportunity to challenge the veracity of the sworn statement included by the police in securing the search warrant." In addition, the motion set forth the following averments: that the "underlying circumstances" contained in the warrant application were false; that the affiants knew or should have known that this information was false; and that the affiants nevertheless deliberately included this false information in their application, or included it with reckless disregard for the

truth. The Appellant further stated that he was prepared to demonstrate the truth of these averments to the court.[1]

 A hearing was scheduled on this motion for December 15, 1978, and on December 18 the court ordered the Commonwealth to produce the informant *in camera*.[2] The Commonwealth orally requested that the court reconsider

1. The Opinions in Support of Reversal apparently credit this offer of proof as a "substantial preliminary showing" that the affiants knowingly included false information in their affidavit, or included information with reckless disregard for the truth, requiring a hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Laying to one side for the moment the question of whether *Franks* is relevant to the issue at hand, *see* n. 2 *infra.*, it is inconceivable that bald, conclusory statements such as these could rise to the level of a "substantial preliminary showing." A review of the record reveals no affidavits or other supporting material for the offer of proof. Moreover, as discussed in the text at 424–425, the evidence actually produced by the Appellant did not establish the falsity of the underlying circumstances, and *no evidence whatsoever* was produced that the policemen/affiants knew their information was false or that they deliberately included false information in their affidavit.

2. Justice Larsen's Opinion in Support of Reversal finds it "undisputed" that this hearing "was required in accordance with the principles enunciated in *Franks v. Delaware*," At 426–427 n. 4. On the contrary, the limited question in *Franks* was whether a defendant *"ever* [has] a right under the Fourth and Fourteenth Amendments, subsequent to the *ex parte* issuance of a search warrant, to challenge the truthfulness of factual *statements made in an affidavit* supporting the warrant." 438 U.S. at 155, 98 S.Ct. at 2676 (emphasis added). The Supreme Court held that as a matter of federal constitutional law a state could not absolutely prohibit challenges to the veracity of a search warrant affidavit, but that such challenges must at least be allowed where the defendant makes a substantial preliminary showing that the affiant knowingly or intentionally, or with reckless disregard for the truth, included in the warrant affidavit a false statement necessary to the finding of probable cause. This Court has held as a matter of state constitutional law that a defendant is entitled to make such an inquiry into the veracity of statements included in an affidavit without a "substantial preliminary showing" of the potential falsity of those facts. *Commonwealth v. Hall*, 451 Pa. 201, 302 A.2d 342 (1973). To this extent it would appear to secure greater rights in the defendant than does *Franks*. Neither *Franks* nor *Hall* is relevant to the decision of this case, however, where the Appellant challenges not the veracity of the *affiant's* statement but the truthfulness of the *informant's* tip. Indeed, in his Concurring Opinion in *Hall*, Justice (now Chief Justice) Nix, joined by Chief Justice Jones and Justice Pomeroy, observed that "perjury by an informant where police are unaware of the falsehood and had a reasonable basis to believe the information received presents an entirely different situation and … should not be controlled by this decision …" 451 Pa. at 210 n. 5, 302 A.2d at 347 n. 5.

its order, and an additional evidentiary hearing was held on January 4 and 5 of 1979.

At this hearing, one of the detective/affiants testified that on August 15, 1978 he received a phone call from an informant he had known for some 3½ years, who had previously given the detective information leading to eight arrests and/or convictions. The informant met the detective at the Pittsburgh Public Safety Building around 9:00 that morning and supplied the information which was set forth in the warrant application.

Defense counsel presented the Appellant's parents as witnesses at the hearing. Because the affidavit in support of the warrant was sworn to at around 10:00 in the morning of August 15 and recited that the "[i]nformant stated that he was in the premises within the past 24 hours ...," the testimony of the Appellant's parents focused on the 24 hour period between 10:00 a.m. August 14 and 10:00 a.m. August 15. Counsel sought to establish that no one else had been in the house during that period, and thus, inferentially, that the informant either lied or did not in fact exist.

The Appellant's father testified that the Appellant had been gone for the previous week. He further testified that he (father) was at home between 10:00 a.m. and 6:30 p.m., and back home, awake, between 10:45 p.m. and 2:00 a.m. (August 15). He also testified that he went to bed around 2:30 a.m. then slept until 7:00 a.m. when he awoke to take some pills, passed the Appellant's room and saw his son sleeping, then returned to bed.

The Appellant's mother's testimony indicated that she was at home and awake the entire period between 10:00 a.m. August 14 and 2:00 a.m. August 15, that she then went to bed until around 6:00 or 7:00 a.m., during which time she at some point heard what she thought were her son's footsteps, and that she awoke around 6:00 or 7:00 a.m. Both mother and father testified that there was no one else in the house during this period.

At the conclusion of the hearing, the court affirmed its previous order requiring production of the informant *in camera*. In its Opinion, the court noted that the ultimate question was whether the "police officer-affiant knowingly falsified any material statement in the affidavit," but framed the issue in this case as whether the defendant could "seek disclosure of the identity of the alleged informant in order to challenge the veracity of the statement made by the police officer-affiant." *Slip Op.* at 2. The court further said that until it could establish the existence of the informant, it would be "without sufficient facts upon which to make a determination . . ." of the ultimate issue. *Id.* at 3. Finding "that the testimony of the Commonwealth's witness lacked credibility," the court concluded that "disclosure of the informant's identity herein is essential to a fair determination of the cause." *Id.* at 4, 5.

The Superior Court panel, one judge dissenting, treated the proceeding below as a suppression hearing because "the lower court's conclusion to discredit the affiant's testimony, if upheld even after production of the informant, would have rendered the warrant invalid and the evidence seized as a result thereof suppressible." 304 Pa.Super. at 313, 450 A.2d at 657.[3] Holding that "the lower court abused its discretion in finding as a fact that the Commonwealth failed to prove the existence of probable cause to justify the issuance of the warrant," the Superior Court reversed.

■ Proper analysis of the issue here first requires that the confusion regarding the procedural posture of the case be dispelled. Although several statements by the lower court in the course of the hearing and in its Opinion, along with the argument of counsel and cases cited in support

---

**3.** Justice Larsen's Opinion in Support of Reversal takes to task the Superior Court for treating the hearing below as a suppression hearing, yet offers *Franks v. Delaware* in support of the argument that the hearing was required. *Franks* arose in the context of a suppression hearing. The question there addressed concerned the extent of the challenge allowed to a search warrant affidavit in order to suppress evidence seized pursuant to the warrant, not whether a separate hearing into the affiant's veracity was required.

thereof, might explain the Superior Court's treatment of the proceeding as a suppression hearing, it is more properly characterized as a discovery proceeding, pursuant to Pa.R. Crim.P. 305, in support of a motion to suppress.

Rule 305 B(2) makes discoverable, at the discretion of the court, "upon a showing that they are material to the preparation of the defense and that the request is reasonable,"

a) the names and addresses of eyewitnesses;
and

d) any other evidence specifically identified by the defendant, provided the defendant can additionally establish that its disclosure would be in the interests of justice.

■ The Appellant was charged with possession of a controlled substance and unlawful possession of a firearm. It is the arresting officers who are the "eyewitnesses" to these crimes of possession. Notwithstanding the fact that he "tipped off" the police that the Appellant was selling drugs, the informant is not an eyewitness to the crimes charged. It is clear that the Commonwealth had no intention, nor did it have any need, to call the informant as an eyewitness at the trial of these charges. Accordingly, subsection(a) of Rule 305B(2) cannot be cited in support of the court's discretionary decision to compel discovery.

■ The only other section of Rule 305B(2) arguably applicable here, the catch-all "any other evidence specifically identified by the defendant" contained in subsection(d), requires a showing that in addition to being material to the preparation of the defense and reasonable, the request be in the interests of justice. It is important to note that the Rule speaks in terms of a showing *by the defendant.* These conditions cannot be assumed, and they must be supported by evidence on the record. It is in this context that the evidence presented at the hearing must be examined to determine whether the defendant met his burden (or more precisely whether the court abused its discretion in determining that he had).

■ It is axiomatic that in reviewing findings of fact, an appellate court must give great deference to the fact finder whose province it is to pass upon the credibility of witnesses, whom he has seen and heard, and determine the weight if any to be given their testimony. This deference does not, however, extend so far as to allow a lower court to base its decision on *speculation* derived from the testimony which it finds credible. The court's determination must be based on facts in the record.

■ The Appellant's offer of proof in his motion for reconsideration for relief under Rule 305 E was that he could establish that the "underlying circumstances" stated in the application were false and that the police officers presented this false information to the magistrate knowingly and deliberately or in reckless disregard of the truth. A thorough review of the record leaves no doubt that because of serious gaps in the evidence actually produced the Appellant failed to substantiate this offer of proof. Taking all of the testimony of the defendant's witnesses as true, that testimony does not so directly and completely contradict the informant's "tip" as recited by the policemen in the affidavit as to require the conclusion that the "underlying circumstances" of the affidavit were false. It is readily apparent that during the period from 2:00 to 6:00 or 7:00 a.m., neither witness had the capacity to be aware of whether anyone else was present in the house. Indeed, the Appellant's mother testified that at one point she heard one set of footsteps which she assumed were her son's. Given that she was asleep for at least some period of time, it cannot be concluded that there were no other footsteps that night, that she would have heard other footsteps if there were any, or even that the footsteps she heard were actually those of her son. It is thus by no means established, from the entirety of the Appellant's proferred evidence, that the "underlying circumstances" of the warrant were false.

■ Even assuming that this evidence did tend to show the falsity of the informant's tip, the Appellant produced absolutely no evidence, and can point to none otherwise in

the record, that the affiants knew that the information was false and deliberately included.it in their application, or that they included it in reckless disregard for whether it was true or false. According to his offer, this is precisely what the Appellant indicated he could prove, which he argued, would entitle him to have the informant produced. Having thus failed to substantiate his offer of proof, the Appellant could not have met his burden of showing that disclosure of the requested information was "reasonable" and "in the interests of justice", and, accordingly, was not entitled to have the informant produced.

Because the question here arose from an interlocutory order certified for appeal, the case should be remanded for determination of the Appellant's Omnibus Pre-Trial Motion. At that proceeding, if the Appellant chose to pursue his veracity challenge, *Commonwealth v. Hall*, 451 Pa. 201, 302 A.2d 342 (1973), he would be required to produce some evidence that the policemen/affiants presented information to the magistrate knowing it was false or with reckless disregard for whether it was true or false. Only if he were able to first meet this burden would it be proper for the court to address the issue of the need for production of the informant.[4]

4. Justice Larsen's Opinion in Support of Reversal determines this to be an "insurmountable 'catch' ... requiring the moving party to first prove the issue ...." At 439. In fact, we require nothing more than that the moving party, who has the burden of proof, present evidence which would justify granting the relief requested. It must not be overlooked that the ultimate issue in the suppression hearing is whether the policemen/affiants had probable cause at the time they applied for the search warrant. The Commonwealth, of course, carries the burden of proving that the facts presented to the magistrate demonstrate probable cause. The defendant, however, must carry the burden of proving his allegations that the information was not factual and that the affiants nevertheless deliberately presented it to the magistrate. Moreover, as was recently emphasized by the United States Supreme Court, "the task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is *substantial evidence in the record supporting the magistrate's decision* to issue the warrant." *Massachusetts v. Upton*, — U.S. —, — — —, 104 S.Ct. 2085, 2085–86, 80 L.Ed.2d 721 (1984) (per curiam) (emphasis added). This Court has consistently interpreted Article I, Section 8 of our Constitution in parallel with

The Order of the Superior Court should be affirmed and the case remanded to the Court of Common Pleas of Allegheny County.

McDERMOTT and HUTCHINSON, JJ., join in this Opinion in Support of Affirmance.

## OPINION IN SUPPORT OF REVERSAL

NIX, Chief Justice.

I am satisfied that in this case a substantial preliminary showing was made that the affiants knowingly or recklessly included false statements within their affidavit. *See Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

The procedure in which the trial court sought to engage was in furtherance of an effort to determine the merits of an allegation of deliberate misstatements by police affiants as to material facts within that affidavit. I, therefore, would reverse the Superior Court and reinstate the lower court's disclosure order. *See Commonwealth v. Hall*, 451 Pa. 201, 208, 302 A.2d 342, 346 (1973) (Nix, J., concurring). In so doing I would reiterate my strong view that such an action "should not suggest that we have affirmed unlimited inquiry into the underlying validity of the affidavit or that any inaccuracy would necessarily justify the exclusion of evidence seized pursuant thereto." *Id.*, 451 Pa. at 210, 302 A.2d at 347 (Nix, J., concurring).

## OPINION IN SUPPORT OF REVERSAL

LARSEN, Justice.

The issue presented by this appeal is whether a trial court has authority to direct the Commonwealth to produce a confidential police informant for an *in camera* interview following a pretrial evidentiary hearing held pursuant to a

federal court decisions under the Fourth Amendment of the United States Constitution, at least as to the meaning of "probable cause". I am persuaded that the United States Supreme Court has properly stated the appropriate "deferential standard of review ... to further the ... strong preference for searches conducted pursuant to a warrant." *Id.* at 2088.

defense discovery motion. Pennsylvania law clearly authorizes a trial court to issue such a directive in appropriate circumstances. The instant case presents such circumstances as the record amply supports the trial court's suspicions as to the veracity of the detective/affiant and the existence *vel non* of the alleged informant. Accordingly, this Court should reverse the decision of the Superior Court which reversed the trial court.

On August 15, 1978, a warrant to search the residence of appellant, John Iannaccio, was issued by a Pittsburgh magistrate. Probable cause for the search was supplied by two Pittsburgh narcotics detectives who, in their application for a search warrant, set forth the following:

> Affiants received information from a confidential reliable informant that John Iannaccio Jr. aka Jack was dealing and concealing LSD from the above described premises. Informant stated that he was in the premises within the past 24 hours and did observe Jack sell LSD to an unknown white female, who appeared to be around 16 years old. Informant stated that Jack was charging $3.00 apiece for the LSD. Informant stated that he oberved [sic] several small tablets which Jack stated that he was going to sell for $3.00 apiece, but would sell them cheaper if the buyer bought in quantity. Informant has proven to be reliable by giving information which has led to the arrest and conviction of James Payne jr., Darryle Robinson and Gregory Beal all for VCSSDCA, [sic] The most recent conviction being that Beal [sic] in June of 1978.

At 10:45 a.m. that morning, appellant's residence was searched and a quantity of drugs was discovered and seized along with a small caliber revolver. Appellant was immediately arrested at the scene and charged with various narcotics (controlled substances) offenses [1] and a violation of the Uniform Firearms Act.[2]

1. Specifically, appellant was charged with possession of controlled substances, possession with intent to deliver controlled substances, and possession of a small amount of a controlled substance. 35 P.S. § 780–113(a)(16), –113(a)(30) and –113(a)(31).

2. 18 Pa.C.S.A. § 6105 (former convict not to carry a firearm).

Defense counsel filed a written request for discovery pursuant to Rule 305 A of the Pennsylvania Rules of Criminal Procedure (Pa.R.Crim.Pro.) seeking, *inter alia,* disclosure of the informant referred to by the affiant/detectives in the application for a search warrant. Upon the refusal by the Commonwealth to comply with this request, appellant filed a motion for relief under Pa.R.Crim.Pro. Rule 305 E.[3] The motion was denied.

Subsequently, defense counsel filed a motion for reconsideration for relief under Rule 305 E asking the court to compel disclosure of the informant's identity and requesting that a hearing be held on that motion. The motion for reconsideration challenged the veracity of the probable cause section of the warrant application and set forth the following averments: that the "underlying circumstances" contained in the application were false; that the affiants presented this false information to the magistrate "deliberately and knowingly" or "in reckless disregard of the truth"; that appellant was prepared to demonstrate the truth of these averments to the court; and that without this false information knowingly or recklessly supplied by the affiants, no probable cause existed for the issuance of the warrant.

A hearing was held on this motion on December 15 and 18, 1978, before the Honorable James R. McGregor, following which the trial court ordered the Commonwealth to

---

**3.** Rule 305 E provides:

**Remedy**

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

produce the informant *in camera*.[4] The Commonwealth then asked the court to reconsider that order and an additional evidentiary hearing was held on January 4–5, 1979.

At this hearing, Detective William Mullen, one of the affiants, testified that on August 15, 1978, he received a phone call from an informant he had known for some 3½ years who had previously supplied the detective with information leading to eight arrests and/or convictions. According to the detective, the caller met him at a rear door of the Pittsburgh Public Safety Building—a door visible to the public but accessible only to police personnel and other authorized persons—at approximately 9:00 a.m. that day. The officer testified that the informant then recited the information which was set forth on the application for a search warrant, after which the search warrant was secured, and the search was executed at appellant's residence. Detective Mullen further testified he had given the informant promises of anonymity because the informant "fear[ed] for his life" and was "afraid of the defendant, Iannaccio." Notes of Testimony (N.T.), January 4, 1979 at 10–11. The detective also indicated that the normal flow of information from informants to narcotics detectives had been interrupted by the knowledge "on the streets" that the court might order the Commonwealth to disclose this informant.

Defense counsel introduced appellant's parents at this hearing. Appellant lived with his parents at the residence which was the subject of the August 15 search. Appel-

4. It is not disputed that a hearing was required at this point in accordance with the principles enunciated in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) which held that, where a defendant makes a substantial preliminary showing that a false statement was knowingly and deliberately, or with reckless disregard for the truth, included by an affiant in his application for a search warrant and where the alleged false statement was necessary to a finding of probable cause, the Fourth Amendment requires that a hearing be held at defendant's request so that he might challenge the veracity and integrity of the warrant. The exact posture and conduct of this initial *Franks* hearing is not clear from the record which contains transcribed oral argument from the proceedings on December 19, 1978 but no transcript from December 15 or 18.

lant's parents testified that appellant had been in Atlantic City the full week preceding August 15,[5] and did not return home until the early morning hours (between 5:00 and 6:00 a.m.) of August 15. Moreover, they specifically testified that, during the entire 24 hour period preceding issuance of the search warrant, no one other than themselves had been in their residence, contrary to the averment in the warrant application that the informant had been present there with appellant and a female during a drug transaction.

The Opinion in Support of Affirmance identifies so-called "serious gaps in the evidence", concluding that "[i]t is readily apparent that during the period from 2:00 to 6:00 or 7:00 a.m., neither witness had the capacity to be aware of whether anyone else was present in the house." Slip opinion at 8. In reaching this conclusion directly contrary to that of the trial court, the opinion in support of affirmance neglects discussion of certain uncontradicted portions of the witnesses' testimony. Appellant's parents testified that their residence was a very small (approximately 30' × 14'), two story house that was laid-out in such a way that they were aware of other persons entering or leaving their house. While Mr. and Mrs. Iannaccio may have been asleep for much of the period between 2:00 and 7:00 a.m., both witnesses testified that Mrs. Iannaccio is a "very light" sleeper. Mrs. Iannaccio sleeps "off and on", awakens at slight sounds including the sound of the morning newspaper carrier leaving the paper on the porch, and was awakened on the morning of August 15 by the sound of a car stopping outside followed by a single set of footsteps in the house. The time was about 5:00 a.m. Mrs. Iannaccio heard no voices in the house. Sometime between 6:00 and 7:00 a.m., Mrs. Iannaccio saw appellant in his bed. Both witnesses testified unequivocally that *no other persons were in their home* on August 14 and 15 for the 24 hour period identified in the search warrant. *All* of this testimony was

5. Mrs. Iannaccio testified that, on August 11, she had wired money via Western Union to John Iannaccio in Atlantic City.

uncontradicted and found credible by the trial court. N.T. January 4, 1979 at 54–91.

"After hearing and consideration of this evidence," the lower court "found that the existence of an informant, whose information to police officers gave rise to probable cause for obtaining a search warrant, was suspect." Slip opinion of lower court at 1. Noting that he was "in the judging business ... not in the guessing business", N.T. at 5, Judge McGregor expressed his desire to interview the alleged informant to either confirm or dispel his suspicions as to the informant's very existence. The court's suspicions were aroused not only by the testimony of appellant's parents, but also by the inherent contradiction in the detective's testimony that this informant, who so feared for his life, nevertheless openly and in public met a narcotics detective at 9:00 a.m. at the building which headquarters the Pittsburgh Police Department.[6] In resolving the conflicting testimony against the Commonwealth, the court stated that "as factfinder [the court] must assess the credibility of witnesses and, in so doing in the instant case, found that the testimony of the Commonwealth's witness lacked credibility." Slip opinion of lower court at 4. Nevertheless, the court gave the Commonwealth an opportunity to rehabilitate or corroborate Detective Mullen's testimony in directing that the informant be produced *in camera* under circumstances designed to protect the informant's identity from disclosure. "Until that is accomplished, the Court is without sufficient facts upon which to make a determination ... as to whether said police officer-affiant knowingly

6. The court stated:

> I would like to say on the record, though, gentlemen, that you know that this informant who is so afraid of his identity being revealed marches right in at nine o'clock in the morning to the Public Safety Building and goes to a meeting in the basement, Public Safety Building, which is known to house the headquarters of the Pittsburgh Police Force. That is interesting.
>
> . . . . .
>
> [A]nd if [informant's] wanted to really conceal their identity ... they would be meeting some place other than the police station.

N.T. at 37, 40.

falsified a material statement in the affidavit supporting the search warrant." *Id.* at 3.

The Commonwealth petitioned the court to certify its disclosure ruling as an interlocutory order involving a controlling question of law, the determination of which may materially advance the ultimate termination of the matter, which petition was granted. 42 Pa.C.S.A. § 702(b) and Pa.R.A.P. Rule 1311. The Superior Court granted permission to appeal and a panel of that court reversed the lower court's disclosure order. 304 Pa.Super. 307, 450 A.2d 694 (1982). This Court then granted Mr. Iannaccio's petition for allowance of appeal.

Pennsylvania law has long recognized that a defendant may go beyond the four corners of a search warrant to challenge the veracity of the affiant whose averments established probable cause for the issuance of the warrant. *Commonwealth v. Hall,* 451 Pa. 201, 302 A.2d 342 (1973) (relied on by the lower court in the instant case) *and Commonwealth v. D'Angelo,* 437 Pa. 331, 263 A.2d 441 (1970). "To rule otherwise would permit the police in every case to exaggerate or expand on the facts given to the magistrate merely for the purpose of meeting the probable cause requirement, thus precluding a detached and objective determination [of probable cause by the magistrate.]" *Commonwealth v. D'Angelo, supra* at 437 Pa. 337–38, 263 A.2d 441.

Defense counsel in the instant case utilized the discovery procedures to facilitate appellant's challenge to the veracity of the affiant. The Pennsylvania Rules of Criminal Procedure relating to discovery, promulgated by this Court in 1977, grant the lower courts broad discretion in discovery matters.[7] Pa.R.Crim.Pro. Rule 305B provides, in relevant portion:

7. It is clear from the record and the pleadings that the proceedings below were discovery proceedings under Pa.R.Crim.Pro. Rule 305. Nevertheless, the Superior Court stated:

To begin with, although the proceeding below was not captioned a suppression hearing, we will treat it as such, inasmuch as the lower court's conclusion to discredit the affiant's testimony, if upheld even

(2) *Discretionary with the Court:* In all court cases, except as otherwise provided in Rule 263 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, *the court may order the Commonwealth* to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, *upon a showing that they are material* to the preparation of the defense, *and that the request is reasonable:*

(a) the names and addresses of eyewitnesses;[8]

. . . . .

(d) any other evidence specifically identified by the defendant, provided the defendant can additionally establish that its *disclosure would be in the interests of justice.*

Whether an informant exists, or whether the affiant deliberately or in reckless disregard for the truth relied

after the production of the informant, would have rendered the warrant invalid and the evidence seized as a result thereof suppressible.

There is no apparent reason for, or logic to, this transformation of a discovery proceeding into a suppression hearing. It is true that, ultimately, disclosure of the informant *might* result in suppression; however, disclosure *might equally* result in a finding that the search warrant was valid and no suppression would, therefore, be ordered. N.T. December 19, 1978 at 6–7. The mere fact that one possible outcome of disclosure might be suppression does not convert a discovery proceeding into a suppression hearing. Thus, the Superior Court erred in treating this proceeding as a suppression hearing and in applying standards of appellate review appropriate to the latter. As discussed at note 13, *infra,* the Superior Court also applied an erroneous standard of review *even if* the proceeding *were* properly considered to be in the nature of a suppression hearing.

**8.** The Opinion in Support of Affirmance restricts the operation of subsection (a) to names and addresses of " 'eyewitnesses' to these crimes of possession." At 424. There is no need to analyze the propriety of this construction of Pa.R.Crim.Pro. 305 B(2)(a) as subsection (d) fully supports the court's disclosure order in this case. I would point out, however, that the rule does not by its terms limit "eyewitnesses" and that, if a person observes a material fact or event relevant to an issue in the proceeding, that person could be considered an "eyewitness" to that fact or event. Webster's New Collegiate Dictionary defines an "eyewitness" as "one who sees an occurrence or an object; *esp:* one who gives a report on what he has seen."

upon false statements by the informant, is a matter obviously "material to the preparation" of a veracity challenge to a search warrant. It is equally obvious that, if a police officer/affiant knowingly and intelligently, or in reckless disregard for the truth, presented false statements to the issuing magistrate in order to secure a search warrant, the "interests of justice" would be gravely undermined. *Commonwealth v. Hall, supra; Rovario v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). As Mr. Chief Justice (then Justice) Nix stated in *Commonwealth v. Hall, supra* at 451 Pa. 210, 302 A.2d 342:

> Where the affiant is a police official and perjury is committed by that official or with his knowledge and consent to provide a basis for securing the warrant I am satisfied that this is the type of offensive governmental action that the Fourth Amendment was directed against and the exclusionary doctrine designed to deter.

(Concurring opinion joined by Chief Justice Jones and Justice Pomeroy).

Since the request for discovery was material to the defense and the disclosure of the informant was, manifestly, in the interests of justice, the lower court had discretion to order such disclosure provided the "request [was] reasonable." Pa.R.Crim.Pro. Rule 305 B(2). While the Commonwealth does not specifically argue that the discovery request and order was unreasonable, it asserts the so-called "informant's privilege" as a barrier to the pretrial production or disclosure of a confidential police informant. The "informant's privilege" is, more accurately, the privilege of the government to withhold from disclosure (or production) the identity (or presence) of persons who furnish information of violations of law to officers charged with enforcement of that law. *Rovario v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957). The privilege is undoubtedly an important and necessary ingredient of the criminal justice system.

> The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement.

The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

The privilege is well-established in this, and virtually all jurisdictions.[9] *See, e.g., Commonwealth v. Carter,* 427 Pa. 53, 233 A.2d 284 (1967); *Commonwealth v. Washington,* 463 Pa. 206, 344 A.2d 496 (1975); *Commonwealth v. Herron,* 475 Pa. 461, 380 A.2d 1228 (1977); *Commonwealth v. Fox,* 267 Pa.Super. 341, 406 A.2d 1072 (1979).

However, it is equally well-established in this Commonwealth, and in the majority of other jurisdictions,[10] that the privilege is not absolute but is limited by compelling exceptions to the general rule of non-disclosure. The oft-repeated statement from *Rovario v. United States, supra* at 353 U.S. 60–61, 77 S.Ct. 627–628, explains why the privilege is a qualified one:

A further limitation on the applicability of the privilege arises from *the fundamental requirements of fairness.* Where the disclosure of an informer's identity, or of the contents of his communication, is *relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause,* the privilege must give way. In these situations the trial court may require disclosure....

This Court has consistently recognized that the privilege against disclosure of an informant is qualified by, and must give way to, "fundamental requirements of fairness" in appropriate circumstances. Thus, we have held that where the disclosure of the informant was critical to the defense of mistaken identity or of entrapment, the lower court erred in refusing to require the Commonwealth to disclose the

9. *See generally* Ringel, *Search and Seizures, Arrests and Confessions,* § 7.4 *and* Annot., *Accused's Right To, And Prosecution's Privilege Against, Disclosure of Informer,* 76 A.L.R.2d 262.

10. *See* Annot., *Privilege Against Disclosure of Informant, supra* note 9 at §§ 5, 32.

informant or his identity. *Commonwealth v. Carter, supra* (informant critical to defense of mistaken identity); *Commonwealth v. Washington, supra* (informant's identity critical to defense of entrapment). *See also: Commonwealth v. Herron,* 475 Pa. 461, 380 A.2d 1228 (1977) ("the Commonwealth has a qualified privilege 'to refrain from disclosing the identity of an informer.' ") *and Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972) (qualified privilege as propounded by United States Supreme Court in *Rovario* reiterated); *Commonwealth v. Bradshaw,* 290 Pa. Super. 162, 434 A.2d 181 (1981).

*Rovario* set forth the flexible test for determining whether disclosure of an informant is required or appropriate:

We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

353 U.S. at 62, 77 S.Ct. at 628. This test has been adopted, *Commonwealth v. Carter, supra,* and *uniformly* applied in this Commonwealth. *See, e.g., Commonwealth v. Washington, supra; Commonwealth v. Herron, supra; Commonwealth v. Garvin, supra; Commonwealth v. Garcia,* 261 Pa.Super. 296, 396 A.2d 406 (1978), allocatur denied; *Commonwealth v. Fox, supra.*

In the instant case, it is quite clear that the lower court properly and skillfully balanced the public interest in protecting the flow of information with the individual's right to prepare his defense. Appellant averred that the affiants knowingly or recklessly supplied false information to the magistrate in order to secure a search warrant. After hearing and oral argument, the lower court found that the testimony of the Commonwealth's witness, one of the affiant's, lacked credibility. Indeed, the court had reason to

doubt the *existence* of the alleged informant. Accordingly, the court ordered disclosure of the informant as the *only* means of establishing whether or not an informant actually existed and, if so, the nature of any information given the affiant.

The court was not unmindful of the public's interest and took full advantage of its authority under Pa.R.Crim.Pro. Rule 305 F to craft imaginative protective orders.[11] Judge McGregor, with the acquiescence of defense counsel, agreed to a one-on-one meeting with the informant not only *in camera* but also outside of the courthouse at a "safe" place to be arranged by the detectives. N.T. December 19, 1978 at 7, 10, 24; N.T. January 4 at 15, 20, 23. Disclosure of the informant's identity was not required by the court. N.T. December 19, 1978 at 10.[12]

Under these circumstances, the lower court properly applied the *Rovario* balancing test in requiring disclosure of the alleged informant, and properly exercised its discretion under Pa.R.Crim.Pro. Rule 305 B.[13]

**11.** Pa.R.Crim.Pro. Rule 305 F provides:

**Protective Orders**

Upon a sufficient showing, the court may at any time order that the discovery or inspection be denied, restricted or deferred, or make such other order as is appropriate. Upon motion of any party, the court may permit the showing to be made, in whole or in part, in the form of a written statement to be inspected by the court *in camera.* If the court enters an order granting relief following a showing *in camera,* the entire text of the statement shall be sealed and preserved in the records of the court to be made available to the appellate court(s) in the event of an appeal.

**12.** Since defense counsel herein acquiesced to the court's protective conditions, we are not faced with the question of whether a defendant could ever insist that the informants' identity be disclosed or that he be permitted to cross-examine the informant.

**13.** Perpetuating and compounding its error in treating this proceeding as a suppression hearing, *see* note 7, *supra,* the Superior Court applied an erroneous standard of review of a suppression court's findings of fact, stating "we are to consider only the evidence of the *prosecution's witnesses* and so much evidence of the defense as, fairly read in the context of the record as a whole, remains uncontradicted." 304 Pa.Superior Ct. at 315, 450 A.2d at 698. (emphasis added). This standard of review, appropriate where the *defendant* appeals an adverse suppression ruling, is totally inappropriate where the *Common-*

The Opinion in Support of Affirmance holds that the appellant "failed to substantiate his offer of proof", and so, "could not have met his burden of showing that disclosure of the requested information was 'reasonable' and 'in the interests of justice', and, accordingly, was not entitled to have the informant produced. ... Only if [appellant] were able to first meet this burden would it be proper for the court to address the issue of the need for production of the informant." At 425–426. This ruling completely thwarts the salutary purposes and goals of our discovery rules and procedures which goals include exposing "any latent procedural or constitutional issues and affording remedies therefor prior to trial." Pa.R.Crim.Pro. 305 Comments, *quoting ABA Standards Relating to Discovery and Procedure Before Trial,* Sec. 1.1(a)(iv). Discovery procedures are designed to enable *both* the Commonwealth and the defendant to discover the evidence necessary to prove (or disprove) their respective positions on relevant trial and pre-trial issues. The Opinion in Support of Affirmance creates an insurmountable "catch" in the discovery process, however, by requiring the moving party to *first prove the issue before* that party is entitled to disclosure of the information necessary to a full and fair resolution of the issue.

The Commonwealth argues that this Court's prior decisions recognizing that disclosure of an informant was necessary *at trial* should not be read as permitting the lower court to order *pretrial* disclosure.[14] There is no basis for

*wealth* appeals the adverse ruling. As Mr. Justice McDermott stated in his Opinion Announcing the Judgment of the Court in *Commonwealth v. Hamlin,* 503 Pa. 210, 216, 469 A.2d 137, 139 (1983):

> [W]here the Commonwealth is appealing the adverse decision of a suppression court, a reviewing court must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. To hold otherwise would make a mockery of the suppression court and place an impossible burden on every defendant regardless of his success or failure at the suppression hearing.

**14.** The Commonwealth notes that the United States Supreme Court has left open the question of whether the Constitution of the United States can ever require the pretrial disclosure of an informant in a

such a trial versus pretrial distinction. Fundamental fairness requires that disclosure of an informant be permitted where pretrial proceedings cast substantial doubt upon the veracity of an affiant who has supplied probable cause information for a search warrant and where disclosure is needed to confirm or dispel those doubts. This Court established over a decade ago that "the veracity of facts establishing probable cause recited in an affidavit supporting a warrant can be challenged and examined at a [pretrial] suppression hearing." *Commonwealth v. Hall, supra* at 451 Pa. 204, 302 A.2d 342. To permit the challenge but, at the same time, deny the defendant the ability to meet that challenge would render our pretrial procedures and techniques mere trappings devoid of substance, and would effectively insulate from meaningful challenge a warrant which is based upon false information allegedly received from a "confidential reliable informant".

Finally, the members of this Court in support of affirmance and the Superior Court panel have *far exceeded* the proper scope of appellate review of a fact finder's determination of credibility. In reviewing findings of credibility, great deference must be given to the fact finder who has scrutinized the demeanor of the witnesses and has evaluated their testimony based upon a myriad of subtle factors and observations that cannot appear on a lifeless appellate record. For this reason, there is no room for doubt that it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced; moreover, the fact finder is free to believe all, part or none of a witness' testimony. *E.g. Commonwealth v. Rose,* 463 Pa. 264, 344 A.2d 824 (1975); *Commonwealth v. Tate,* 485 Pa. 180, 401 A.2d 353 (1979); *Commonwealth v. Yost,* 478 Pa. 327, 386 A.2d 956 (1978); *Commonwealth v. Garvin, supra.*

state criminal proceeding. *See Franks v. Delaware, supra* at 438 U.S. 170, 98 S.Ct. at 2683 *and Colorado v. Nunez,* 465 U.S. 324, 104 S.Ct. 1257, 79 L.Ed.2d 338 (1984); concurring opinion by White, J., joined by Burger, C.J. and O'Connor, J.). We are not constrained by that Court's understandable reluctance to resolve this question.

Here, the lower court found that the affiant lacked credibility because appellant's witnesses, which the court chose to believe, contradicted the "underlying circumstances" set forth in the warrant application. (Thus, having credited the testimony of appellant's parents, the court found that either affiant or the informant, or both, had rendered false statements.) Further, the court found inherently incredible the affiant's testimony that an informant who feared for his life would walk into the highly visible headquarters of the Pittsburgh Police Department at 9:00 a.m. to meet with a narcotics detective. While an appellate court might not reach these same inferences or form the same conclusion from the testimony, it cannot disregard the credibility determination of the trier of fact as has been done in the instant case.[15]

From the foregoing, this Court should hold that, under the circumstances, the lower court did not err in ordering the Commonwealth to produce the alleged informant *in camera*. Accordingly, the order of the Superior Court should be reversed and the case remanded to the Court of Common Pleas of Allegheny County for further proceedings consistent with this opinion.

FLAHERTY, J., joins in this Opinion in Support of Reversal.

**15.** The Superior Court reviewed the affiant's testimony and found it to be credible based upon the following:

The officer who testified, in open court, did so fully and in precise detail as to what the informer told him and as to why he had reason to believe the information was truthful. The officer was under oath, was subject to cross-examination and never wavered from his position as to the facts surrounding the securing of the warrant, nor did he alter his view as to the existence of the confidential informant.

Essentially, this reasoning amounts to a directive to the lower court that it *must* believe the testimony of policemen who do not waver from their position while testifying. No doubt, most law enforcement officers testify truthfully; yet the approach taken by the Superior Court creates an almost insurmountable presumption that the police officer-witness *must* be believed. Such an approach is intolerable.