J-S30011-20 & J-S30012-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KASHIF OMAR ELLIS | : | |
| | : | |
| Appellant | : | No. 1577 WDA 2019 |

Appeal from the Judgment of Sentence Entered April 16, 2019
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0001880-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KASHIF ELLIS | : | |
| | : | |
| Appellant | : | No. 1580 WDA 2019 |

Appeal from the Judgment of Sentence Entered April 16, 2019
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0000773-2018

BEFORE:   MURRAY, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    FILED AUGUST 11, 2020

In these consolidated appeals, Kashif Omar Ellis (Appellant) appeals

from the judgment of sentence imposed after a jury convicted him of first-

degree murder, robbery, criminal conspiracy, aggravated assault, burglary,

_____

[*] Former Justice specially assigned to the Superior Court.

criminal trespass, recklessly endangering another person, discharging a firearm into an occupied structure, criminal use of a communication facility, and possession with intent to deliver a controlled substance (collectively, "the murder charges").[1] The jury also convicted Appellant, in a separate case, of intimidation of a witness/victim, and retaliation against a witness/victim[2] (collectively, "the intimidation charges"). We affirm.

On July 13, 2013, Appellant orchestrated a robbery with his then-paramour and co-defendant, Taylor Griffith (Griffith), and Quasim Green (Green). At Appellant's direction, Griffith visited the residence of the victim, Stephen Lamont Hackney (Decedent). While inside the residence, Griffith texted Appellant, informing him that she saw large quantities of narcotics and U.S. currency, and that the Decedent was alone and unarmed. Griffith, who was a Commonwealth witness at trial, testified that she unlocked the back door to the Decedent's residence so that Appellant and Green could enter. Appellant barged into the Decedent's bedroom and shot him three times, resulting in his death. Appellant and his co-defendants then stole the cash and narcotics and fled.

_____

[1] 18 Pa.C.S.A. §§ 2502(a), 3701(a)(1)(i), 903(a), 2702(a)(1) and (4), 3502(a)(1), 3503(a)(1)(i), 2705, 2707.1(a), 7512(a); 35 P.S. § 780-113(a)(30).

[2] 18 Pa.C.S.A. §§ 4952(a)(1), 4953(a).

The police responded to the scene and discovered the Decedent's body, as well as large quantities of cash nearby. After securing and searching the surrounding area, police seized a Samsung cellphone (Samsung phone), which had been discarded in the alley behind the Decedent's residence. The police obtained a search warrant for the digital contents of the Samsung phone. Forensic analysis of the Samsung phone revealed that it belonged to Green.

The investigation into the murder went on for several years. During the investigation, the police utilized a software geo-location mapping program called CellHawk.[3] The investigating officers accessed CellHawk geo-location data for two separate cell phones that, police determined, were respectively associated with Appellant and Griffith. The data showed these phones in the general area of the Decedent's residence on the night of the murder. It further showed that both Appellant and Griffith's phones were in the Philadelphia area shortly after the murder, which corroborated Griffith's account. The police obtained the CellHawk evidence, with respect to both Appellant and Griffith's phones, via a court order.

Notably, one of the police officers involved in the investigation was former Altoona police detective Matthew Starr (Officer Starr). After most of

_____

[3] This program collects historical data from cellular tower "pings" to locate cellphone users on a given date and time.

the investigation had occurred, Officer Starr was terminated from the police force and convicted of fraud in an unrelated matter.[4]

In July 2017, the Commonwealth filed the murder charges against Appellant at CR 1880-2017 (No. 1880-2017). The Commonwealth subsequently initiated a second case against Appellant in May 2018, docketed at CR 773-2018 (No. 773-2018), charging him with the intimidation charges.[5] The trial court joined the two cases.

Appellant subsequently filed an omnibus pre-trial motion (OPT motion). The OPT motion sought, inter alia, suppression of (1) Appellant's CellHawk historical cell site location information; and (2) recordings of inculpatory telephone calls and letters that Appellant made while incarcerated pending trial ("the prison calls evidence."). The trial court conducted two hearings, after which it denied the OPT motion.

In November 2018, Appellant filed a motion (the recusal motion), asserting that the entire bench of Blair County, as well as the District Attorney's Office, should be disqualified from participating in his trial. He argued that there was a conflict of interest because Griffith was the daughter

_____

[4] Neither party called Officer Starr as a witness at Appellant's trial.

[5] These charges arose out of Appellant's threatening to kill Griffith because she agreed to testify as a Commonwealth witness against Appellant in exchange for pleading guilty to third-degree murder, and receiving a sentence of 15 to 30 years in prison.

- 4 -

of the Blair County Prothonotary/Clerk of Courts, Robin Patton (Prothonotary Patton). The trial court denied the recusal motion.

On January 3, 2019, four days prior to jury selection, Appellant filed a motion for a continuance, which the trial court denied. Jury selection commenced on January 7, 2019. Appellant was shackled during jury selection and trial. For this reason, Appellant filed a motion for a mistrial, which the trial court denied. The jury convicted Appellant of the murder charges and the intimidation charges.

On April 16, 2019, the trial court sentenced Appellant, at No. 1880-2017, to life in prison without the possibility of parole. At No. 773-2018, the court imposed an aggregate sentence of 5 to 10 years in prison, to run consecutively to the sentence at No. 1880-2017.

On April 26, 2019, Appellant filed a timely post-sentence motion for reconsideration of sentence/new trial. He challenged the trial court's denial of his claims raised in the OPT motion and recusal motion. He further asserted that he should not have been shackled during jury selection, and that the Commonwealth committed a discovery violation by failing to provide the defense with certain witness statements prior to trial. The trial court denied the post-sentence motion by an order and opinion entered on December 2, 2019.

Appellant timely filed notices of appeal at each docket number, followed by court-ordered concise statements of errors complained of on appeal,

pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). This Court consolidated the appeals sua sponte.

In the appeal at No. 1880-2017, Appellant presents nine issues for review:

    I.    WAS [APPELLANT] DENIED HIS RIGHT TO DUE PROCESS AND A FAIR AND IMPARTIAL TRIAL WHEN HE WAS PARADED IN FRONT OF THE JURY AT JURY SELECTION IN SHACKLES?

    II.    WAS [APPELLANT] DENIED DUE PROCESS AND A RIGHT TO A FAIR AND IMPARTIAL TRIAL WHEN THE TRIAL COURT REFUSED TO SUPPRESS THE INTERCEPTION OF [APPELLANT'S] PHONE RECORDS AND WRITTEN COMMUNICATIONS OBTAINED FROM THE STATE CORRECTIONAL INSTITUTIONS OF GRATERFORD AND HUNTINGDON WITHOUT A WARRANT?

    III.    DID THE COMMONWEALTH COMMIT BRADY[6] VIOLATIONS IN FAILING TO TIMELY DISCLOSE THE STATEMENT OF ASHLEY BRUBAKER AND TO TIMELY REVEAL THE COMMONWEALTH'S KNOWLEDGE OF THE UNTRUTHFULNESS OF THE STATEMENT OF POTENTIAL COMMONWEALTH WITNESS KELSEY BERGMAN?

    IV.    DID THE COMMONWEALTH VIOLATE THE RULES OF DISCOVERY BY FAILING TO PROVIDE TIMELY NOTICE OF THE TESTIMONY OF ASHLEY BRUBAKER AND THE UNTRUTHFULNESS OF THE STATEMENT OF POTENTIAL COMMONWEALTH WITNESS KELSEY BERGMAN[,] ALONG WITH FAILING TO PROVIDE NOTICE OF THE EXPERT TESTIMONY OF AGENT THOMAS MOORE OF THE ATTORNEY GENERAL'S OFFICE[,] ALL OF WHICH INFORMATION SHOULD HAVE BEEN REVEALED IN DISCOVERY[?]

_____

6 See Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

V. DID THE COURT VIOLATE [APPELLANT'S] RIGHT UNDER THE CONFRONTATION CLAUSE OF BOTH THE UNITED STATES CONSTITUTION AND THE PENNSYLVANIA CONSTITUTION TO CROSS-EXAMINE TRAVIS DENNY[,] WITH RESPECT TO A LETTER SUBMITTED TO HIS ATTORNEY BY HIS GIRLFRIEND SEEKING A REDUCTION IN THE SENTENCE HE WAS SERVING?

VI. DID THE TRIAL COURT ERR IN DENYING A HEARING ON [APPELLANT'S] FRANKS[ V. DELAWARE, 438 U.S. 154 (1978)] MOTION WITH RESPECT TO THE SEARCH WARRANTS BASED UPON THE STATEMENTS AND INFORMATION PROVIDED BY AN UNRELIABLE WITNESS[,] AS WELL AS THE ACTIONS AND ACTIVITY FROM [OFFICER] STARR WHO WAS SUBSEQUENTLY CONVICTED AND SENTENCED ON CHARGES INVOLVING FRAUD?

VII. DID THE COURT DENY [APPELLANT'S] RIGHT TO A FAIR AND IMPARTIAL TRIAL BY REFUSING TO RECUSE ITSELF AND/OR RECUSE THE DISTRICT ATTORNEY OF BLAIR COUNTY WHEN HIS CO-DEFENDANT, TAYLOR GRIFFITH[,] AND MAIN COMMONWEALTH WITNESS WAS THE DAUGHTER OF THE PROTHONOTARY AND CLERK OF COURT OF BLAIR COUNTY?

VIII. WAS [APPELLANT] IMPROPERLY DENIED HIS REQUEST FOR A CONTINUANCE FILED WITH THE COURT ON JANUARY 3, 2019 AND DENIED BY ORDER OF COURT DATED JANUARY 4, 2019 FILED ON JANUARY 7, 2019[?]

IX. WAS [APPELLANT] DENIED HIS RIGHT TO DUE PROCESS AND A FAIR AND IMPARTIAL TRIAL WHEN THE COMMONWEALTH OBTAINED EVIDENCE AS TO PINGING [O]F ... [APPELLANT'S] CELL PHONE THROUGH A COURT ORDER INSTEAD OF PROPERLY OBTAINING A WARRANT FOR SAID EVIDENCE AS REQUIRED BY CARPENTER V. UNITED STATES, 585 U.S. ___, 138 [S. CT.] 2206, 201 LAWYERS EDITION 2D. 507[] (2018)[?]

Appellant's Brief (1577 WDA 2019) at 6-9 (footnote added, issues ordered).

In the appeal at No. 773-2018, Appellant raises three issues. These issues are identical to and correspond with three of the issues that Appellant presents above; namely, issues 1, 7 and 8.[7] See Appellant's Brief (1580 WDA 2019) at 6. Accordingly, we will address those issues together.

In his first issue, Appellant argues that he was deprived of his right to a fair trial, and his presumption of innocence, where he was "paraded" in front of the jury while restrained with shackles. Appellant's Brief at 19-24. Appellant contends that the trial court thus erred in denying his motion for a mistrial. Id. at 19.

> It is well settled under common law and the Constitution that, part and parcel of the concept of a fair trial, is a defendant's right to be permitted to appear free from shackles or other physical restraint – this right, however, is not absolute. Commonwealth v. Jasper, 610 A.2d 949, 955 (Pa. 1992). Circumstances that have justified the use of restraint include where a defendant disrupts the proceedings, where there is a danger of escape, and where the court believes that an unrestrained defendant may attack others. Id. Proper security measures are within the sound discretion of the trial court, and, thus, will not be disturbed absent an abuse of that discretion. Commonwealth v. Patterson, 308 A.2d 90, 94 (Pa. 1973).

In the Interest of F.C. III, 2 A.3d 1201, 1222 (Pa. 2010) (citations modified). Additionally, "where the trial evidence shows that a violent defendant was incarcerated at the time of trial, no prejudice occurs even when restraints are visible to the jury." Jasper, 610 A.2d at 955.

---

[7] Citations to Appellant's arguments for these issues reference Appellant's Brief at 1577 WDA 2019.

The trial court rejected this issue on the basis that:

(1) Appellant failed to establish that the jury actually saw him in restraints at any point;

(2) Even if the restraints were visible, the jury already knew that Appellant was incarcerated by other information, and thus, he suffered no prejudice; and

(3) In light of Appellant's numerous misconducts in pre-trial incarceration, his threatening to kill a Commonwealth witness, and his unruly courtroom behavior, it was necessary to place him in restraints to ensure safety and courtroom order.[8]

See Opinion and Order, 9/20/19, at 20-22. Upon review, we incorporate further the trial court's reasoning, which is supported by the law and the record. See id. In so doing, we note that during pre-trial proceedings, the trial court expressly warned Appellant that his threatening and unruly conduct could result in him being restrained during trial. See N.T., 3/23/18, at 7; N.T., 7/30/18, at 35-36. In addition, during jury selection, Appellant was dressed in civilian clothing, his right hand was free, and the defense table was equipped with a "skirt", which blocked the jury from seeing anything below Appellant's waist. N.T., 1/7/19, at 20. Finally, the court stated that it would have been willing to issue a curative instruction to the jury concerning restraints and/or Appellant's incarceration, but defense counsel did not

_____

[8] While Appellant was incarcerated in the Blair County Prison awaiting trial, he threatened to harm Griffith and prison personnel. In pre-trial proceedings, the trial court warned Appellant that if he continued this conduct, the court would have no choice but to shackle him in further court proceedings.

request an instruction. See id. at 10-15. We therefore find no merit to Appellant's first issue.

In his second issue, Appellant argues that the trial court erred by depriving him of a fair trial when it refused to suppress the prison calls evidence; Appellant claims the evidence was the product of an unlawful search and seizure. See Appellant's Brief at 27-31.

The trial court likewise addressed this claim in its opinion, summarizing the relevant law concerning the admissibility of such evidence, and determining that denial of the suppression request was proper because:

> (1) The court initially denied Appellant's motion to suppress the evidence "without prejudice" to Appellant to renew and further develop the claim, but he never did so;
>
> (2) Appellant never objected to the admission of this evidence at trial; indeed, he actually consented to the entire recording of Appellant's calls from prison being played to the jury; and
>
> (3) Appellant failed to articulate any reasonable expectation of privacy that he had concerning these communications.

See Opinion and Order, 9/20/19, at 16-19. Again, the court's reasoning is supported by the record and law, and we agree with its conclusion. We further note that the Commonwealth's interception of Appellant's prison phone calls was permitted under Pennsylvania's Wiretap Act, which provides in relevant part that it is not unlawful for:

> an investigative officer, a law enforcement officer or employees of the Department of Corrections for State correctional facilities to intercept, record, monitor or divulge any telephone calls from or to an inmate in a facility [provided that delineated conditions are met].

- 10 -

18 Pa.C.S.A. § 5704(13). Appellant, as a state inmate, was given an automated warning that any inmate telephone call could be monitored or recorded. Accordingly, we reject Appellant's second issue. See id.

We address Appellant's third and fourth issues together because they are related. Appellant claims the Commonwealth violated Brady, supra, by failing to alert him to material untruths in the police statement given by "proposed" Commonwealth witness Kelsey Bergman (Bergman), and to give him advance notice of her testimony.[9] See Appellant's Brief at 31-34; 37-38. Appellant argues that this information would have assisted his defense theory and provided him an opportunity to undermine the credibility of Griffith's testimony. Id. at 33-34. Appellant further contends that the Commonwealth committed a second Brady violation concerning Ashley Brubaker (Brubaker), who testified as a Commonwealth witness and spoke with police on the night of the murder. Id. at 34, 37-38.

Appellant's claim presents a question of law; our standard of review is de novo and our scope of review is plenary. Commonwealth v. Mullins, 918 A.2d 82, 84 (Pa. 2007). To prove a Brady violation, a defendant must show: "(1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant; and (3) the suppression prejudiced the defendant." Commonwealth v. Tharp, 101 A.3d

---

[9] Neither party called Bergman as a witness at trial.

736, 747 (Pa. 2014) (citation omitted). "Conversely, the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish materiality in the constitutional sense." Commonwealth v. Dennis, 17 A.3d 297, 308 (Pa. 2011) (citation omitted). The burden of proof is on the defendant to demonstrate that the Commonwealth withheld or suppressed material evidence. Commonwealth v. Cam Ly, 980 A.2d 61, 75 (Pa. 2009); see also id. (stating that the "prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial") (citation omitted).

Appellant's claims are unavailing. Concerning Bergman, the Commonwealth never called her to testify. Appellant had an opportunity to present her testimony; however, he declined to do so. Moreover, Appellant fails to identify Bergman's alleged "untruths," and advances only a general claim of a Brady violation. See Commonwealth v. Tielsch, 934 A.2d 81, 93 (Pa. Super. 2007) (holding that undeveloped claims will not be considered on appeal). Finally, the record supports the Commonwealth's response that it: (1) provided Appellant with Bergman's police statement during discovery; and (2) spoke with Appellant's defense counsel prior to trial and pointed out the discrepancies in Bergman's statements. See Response to Post-Sentence Motion, 8/27/19, at 10; see also id. at 11 (asserting that the inconsistencies

in Bergman's statements had nothing to do with Appellant because she was not present at the Decedent's residence when the murder occurred).

Regarding Appellant's second Brady claim implicating Brubaker, Appellant raises this claim for the first time on appeal; accordingly, it is waived. See Pa.R.A.P. 302(a) (stating that a claim cannot be raised for the first time on appeal); see also Commonwealth v. Melendez-Rodriguez, 856 A.2d 1278, 1288 (Pa. Super. 2004) (en banc) ("[a] party cannot rectify the failure to preserve an issue by proffering it in response to a Rule 1925(b) order.") (citation omitted). Additionally, Appellant's counsel did not object to the introduction of Brubaker's testimony or assert any unfair surprise, even after an offer of proof by the prosecutor. See N.T., 1/29/19, at 138-39.[10] We discern no record support for Appellant's claim that the Commonwealth possessed materials documenting Brubaker's statements that were not provided in discovery.

Finally, in connection with Appellant's fourth issue, he merely asserts, in two sentences, that the Commonwealth committed a third Brady violation by failing to provide the defense advance notice of the testimony of Agent

_____

[10] The record reflects that there was no formal police interview of Brubaker until the time of trial, on January 29, 2019, and defense counsel thoroughly cross-examined Brubaker about her statements. See N.T., 1/29/19, at 138-39, 156-63.

Thomas Moore (Agent Moore) of the Attorney General's Office.[11]  Appellant's

Brief at 38.  However, because Appellant has failed to develop this claim in

any meaningful fashion, we are precluded from considering it.  See Tielsch,

supra; see also Coulter v. Ramsden, 94 A.3d 1080, 1088-89 (Pa. Super.

2014) (stating that mere issue spotting without analysis or legal citation to

support an assertion precludes appellate review of a matter).[12]  Appellant's

third and fourth issues do not merit relief.

In his fifth issue, Appellant asserts that the trial court committed

reversible error by precluding his counsel from cross-examining

Commonwealth witness Travis Denny (Denny), who was Appellant's former

cellmate.[13]  See Appellant's Brief at 38-41.  Specifically, Appellant argues that

he was deprived of his right to confrontation concerning a certain letter that

Denny allegedly had "knowledge of";[14] the letter purportedly expressed

_____

[11] The Commonwealth presented Agent Moore as an expert witness regarding the meaning of certain phrases Appellant used in telephone calls he placed while incarcerated.

[12] Even if Appellant had properly developed this claim, we would have concluded that it lacks merit for the reasons set forth in the trial court's opinion.  See Opinion and Order, 12/2/19, at 19-20 (stating that Agent Moore's expert testimony was not a surprise to the defense where the Commonwealth filed of record a document that outlined his testimony).

[13] Denny testified that he was incarcerated with Appellant in 2015, when Appellant confessed to him that he shot someone named Steve and stole his money.

[14] Denny's girlfriend authored this letter and mailed it to Denny's attorney.

Denny's request for a reduced sentence in exchange for his testimony at Appellant's trial. See id. at 38, 40.

The standard of review applicable to this question of law is de novo. Commonwealth v. Tejada, 161 A.3d 313, 317 (Pa. Super. 2017). The trial court has once again capably addressed Appellant's issue, citing applicable law, and determining that Appellant was not deprived of his right to confront Denny where:

> (1) Appellant's counsel, in fact, attacked Denny's credibility and motive for testifying against Appellant;
>
> (2) Denny did not author the letter; and
>
> (3) The trial court did not bar Appellant from seeking to admit the letter via the testimony of its author.

See Opinion and Order, 9/20/19, at 23-25. The trial court's reasoning is supported by the record and law, and we agree with its determination; thus, we affirm on this basis. See id.

In his sixth issue, Appellant contends that the trial court erred in denying his request for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). Appellant argues that he should have been permitted to "explore the issues which resulted in [Officer] Starr's termination" and conviction, where Officer Starr was the affiant of the affidavit of probable cause for the Samsung cellphone belonging to co-defendant Green.[15] Appellant's Brief at 41-43.

_____

[15] Appellant joined in Green's omnibus pre-trial motion for a Franks hearing.

The Pennsylvania Supreme Court summarized the United States Supreme Court's holding as follows:

> [Franks] addressed whether a defendant has the right, under the Fourth and Fourteenth Amendments, to challenge the truthfulness of factual averments in an affidavit of probable cause. The Court held where the defendant makes a substantial preliminary showing the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the affidavit, the Fourth Amendment requires a hearing be held at the defendant's request. The Court emphasized the defendant's attack on the affidavit must be "more than conclusory and must be supported by more than a mere desire to cross-examine"; the defendant must allege deliberate falsehood or reckless disregard for the truth, accompanied by an offer of proof. If the defendant meets these requirements, but the remainder of the affidavit's content is still sufficient to establish probable cause, no hearing is required. If the affidavit's remaining content is insufficient, a hearing is held, at which the defendant must establish, by a preponderance of the evidence, the allegation of perjury or reckless disregard. If he meets this burden, the affidavit's false material is disregarded; if its remaining content is insufficient to establish probable cause, the search warrant is voided, and the fruits thereof are excluded.

Commonwealth v. James, 69 A.3d 180, 188 (Pa. 2013) (citations omitted).

Essentially, Appellant claims that because Officer Starr committed fraud in an unrelated matter, he may have committed fraud in Appellant's case. This claim is unavailing. The Samsung phone belonged to Green, not Appellant, and Appellant asserted no possessory interest in it. Appellant never requested a Franks hearing relative to the probable cause affidavit. Moreover, Appellant's claim is undeveloped; he fails to reference any statements in the affidavit he contends to be purportedly false. See James, supra (emphasizing that a defendant's Franks attack on an affidavit must be

more than conclusory, and that the defendant must put forth a "substantial" preliminary showing that the affidavit contains falsehoods); Commonwealth v. Iannaccio, 480 A.2d 966, 969 n.1 (Pa. 1984) (holding that bald, conclusory statements are insufficient to rise to the level of a substantial preliminary showing under Franks).

In his seventh issue, Appellant argues that the trial court erred in denying his recusal motion. See Appellant's Brief at 45-52. Appellant contends that the family relationship between Griffith and Prothonotary Patton created a conflict of interest implicating the Blair County District Attorney's Office and the entire bench of Blair County. See id. According to Appellant, Patton, who was not a witness at Appellant's trial, had a "vested interest" in the outcome. Id.

We review a claim challenging the denial of a recusal motion for an abuse of discretion, and our review is "exceptionally deferential." In re L.V., 209 A.3d 399, 415 (Pa. Super. 2019).

> We recognize that our trial judges are honorable, fair and competent, and although we employ an abuse of discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially. A trial judge should grant the motion to recuse only if a doubt exists as to his or her ability to preside impartially or if impartiality can be reasonably questioned. In order to prevail on a motion for recusal, the party seeking recusal is required to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially.

Id. (citations omitted).

We also review the denial of a motion to disqualify a prosecutor for an abuse of discretion. Commonwealth v. Sims, 799 A.2d 853, 856 (Pa. Super. 2002). A district attorney should be disqualified where "an actual conflict of interest affecting the prosecutor exists in the case." Commonwealth v. Eskridge, 604 A.2d 700, 702 (Pa. 1992). However, a mere allegation or appearance of impropriety or animosity is insufficient to establish an actual conflict of interest. Sims, 799 A.2d at 857.

In support of his claim, Appellant primarily relies on two decisions, Eskridge, supra, and Comm. Ex rel. Amor v. Amor, 398 A.2d 173 (Pa. Super. 1979) (en banc). See Appellant's Brief at 49-51. However, both cases are readily distinguishable. See Eskridge, 604 A.2d at 701-02 (holding that an actual conflict barring prosecution existed where the county district attorney's law firm represented a car accident victim in a personal injury action previously instituted against the defendant, and the accident victim would be a witness in the same defendant's separate criminal case); Amor, 398 A.2d at 174 (holding that recusal of the entire county bench was required where a woman who was remarried to a common pleas judge of that county would have to appear before one of her husband's judicial colleagues in a child support action initiated by the woman's ex-husband).

There is no legal authority for the proposition that when a biological relative of a county row officer is called as a witness, the district attorney and entire bench of that county must remove themselves from the case. See,

e.g., Commonwealth v. Lutes, 793 A.2d 949, 956-57 (Pa. Super. 2002) (holding that the trial court did not err in denying a motion to disqualify the district attorney's office and no conflict of interest existed where the victim was a county commissioner).

Furthermore, during jury selection, the trial court informed the jury of the family relationship between Griffith and Prothonotary Patton. N.T., 1/7/19, at 69-70. The court inquired as to whether this fact would have any impact on their ability to be fair and impartial. Id. No juror responded that it would, and Appellant's counsel made no further inquiries. Id. The trial court has also considered testimony from Blair County First Deputy Prothonotary Vicky Claar about any conflict of interest. Ms. Claar stated that steps were taken to insulate Prothonotary Patton from any involvement with Appellant's case and any issues related to Griffith, and averred that no conflict of interest existed. See N.T., 8/7/18, at 27-34. Moreover, Appellant concedes that he "is not challenging any personal impropriety on the part of the [trial] court or the District Attorney's Office"; Appellant's Brief at 48. Upon review, we discern no evidence to support a finding of bias, prejudice or unfairness. See, e.g., Opinion and Order, 9/20/19, at 13 (explaining that the trial court had no social and minimal professional contacts with Prothonotary Patton). Finally, to the extent Appellant emphasizes the plea deal that the District Attorney's Office offered Griffith in exchange for her testimony at Appellant's trial, see Appellant's Brief at 46-48, this is a routine occurrence and function

of the prosecution's authority, and there is no evidence indicating that the prosecution was partial. Accordingly, Appellant's seventh issue does not merit relief.

In his eighth issue, Appellant contends that the trial court abused its discretion in denying his motion for a continuance filed four days prior to jury selection. See Appellant's Brief at 53-55. According to Appellant, his defense counsel:

> needed further investigation of various matters which was exemplified by what occurred at the trial with respect to the introduction of testimony of Ashley Brubaker, the purported false statements given by Kelsey Bergman[,] and the previous undisclosed testimony of the expert witness, Agent Thomas Moore.

Id. at 55.

> We recognize:
>
> Appellate review of a trial court's continuance decision is deferential. The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. ... Discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record.

Commonwealth v. Brooks, 104 A.3d 466, 469 (Pa. 2014) (citation modified). Trial judges "necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." Commonwealth v. Sandusky, 77 A.3d 663, 671 (Pa. Super. 2013) (citation

omitted); see also Commonwealth v. Antidormi, 84 A.3d 736, 745-46 (Pa. Super. 2014) (stating that an appellant "must be able to show specifically in what manner he was unable to prepare for his defense or how he would have prepared differently had he been given more time. We will not reverse a denial of a motion for continuance in the absence of prejudice."). To determine whether a trial court erred in denying a continuance request, "we must examine the circumstances present in the case, especially the reasons presented to the trial court for requesting the continuance." Sandusky, 77 A.3d at 672.

The case against Appellant was initiated in July 2017. Appellant filed the motion for continuance approximately 1½ years later, and just four days prior to jury selection on January 7, 2019. The record shows that the trial court had: (1) considered numerous pre-trial motions filed by Appellant; (2) previously granted several other continuances requested by Appellant; (3) ensured that discovery was completed; and (4) appointed an expert witness and an investigator to assist Appellant's defense. Additionally, trial had previously been delayed after Appellant fired his first counsel and chose to proceed pro se, but eventually had new counsel appointed to represent him.

Further, Appellant's defense counsel was informed in October 2018 that the case would proceed to trial in late January 2019. See N.T., 10/9/18, at 43-44. Notably, on November 27, 2018, the following exchange occurred between the trial court and defense counsel:

> BY THE COURT:  …  I can resolve [any outstanding matters] for this matter to go to trial January 28th[, 2019].  It is two full months.  …
>
> [Defense counsel]:  I am okay with January 28th.

N.T., 11/27/18, at 113 (emphasis added).

The record supports the trial court's statement that there "was no presentation to the court, nor did it appear to the court prior to trial, that counsel for [Appellant] felt he was unprepared for trial."  Opinion and Order, 9/20/19, at 34.  Finally, we discern no record support for Appellant's claim that he was prejudiced by the court's refusal to afford him yet another continuance, especially one requested so close to trial.  See, e.g., Antidormi, 84 A.3d at 746 (holding that the trial court properly denied the defendant's fifth request for a continuance, made on the first day of trial, which was based upon nothing more than a bald allegation by defense counsel of insufficient time to prepare).  Accordingly, the trial court acted within its discretion in denying Appellant's request for a continuance.

In his ninth and final issue, Appellant contends that the trial court deprived him of a fair trial by permitting the Commonwealth to introduce the CellHawk historical cell site location information (CSLI) for his phone without first obtaining a search warrant pursuant to Carpenter, 138 S. Ct. 2206.  See Appellant's Brief at 25-26.  The United States Supreme Court held that, absent a specific exception to the warrant requirement, law enforcement must first

obtain a search warrant supported by probable cause in order to obtain CSLI from wireless service providers. Carpenter, 138 S. Ct. at 2221.

In reviewing Appellant's claim:

> our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is de novo. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted.

Commonwealth v. Yandamuri, 159 A.3d 503, 516 (Pa. 2017) (citations omitted).

The trial court concluded that Appellant waived this issue because he failed to timely raise a claim implicating Carpenter prior to his post-sentence motion. See Opinion and Order, 9/20/19, at 25-32; see also id. at 32-33 (opining that even if the claim was preserved, it lacks merit because any error in admitting the CSLI evidence was harmless given the totality of the other overwhelming evidence of Appellant's guilt). We agree, as the rationale is again supported by the record and law. Therefore, we affirm Appellant's final issue on this basis. See id. at 25-33.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  8/11/2020