J-S12011-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ILDELFONSO CRUZ | : | |
| | : | |
| Appellant | : | No. 207 EDA 2021 |

Appeal from the Order Entered January 4, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008946-2011

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ILDELFONSO CRUZ | : | |
| | : | |
| Appellant | : | No. 208 EDA 2021 |

Appeal from the Order Entered January 4, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008945-2011

BEFORE: BENDER, P.J.E., BOWES, J., and DUBOW, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED JUNE 24, 2022**

Appellant, Ildelfonso Cruz, appeals from the January 4, 2021 order denying his timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful review, we vacate the PCRA court's order, vacate Appellant's sentence of registration requirements under Pennsylvania's Sex Offender Registration and Notification Act (SORNA), 42 Pa.C.S. §§ 9799.10–9799.41, and remand with instructions.

The PCRA court summarized the pertinent facts and procedural history of Appellant's case, as follows:

On April 21, 2011, [E.P.] went to her home located … in Philadelphia to pack clothes to bring to her mother's house. [E.P.] asked Luis Ramon and his younger brother, Ricardo Ramon, to accompany her because she was having a problem with her ex-boyfriend, [] Appellant.

[E.P.], Luis, and Ricardo arrived at [E.P.'s] home at approximately 11:00 p.m. that night. While [E.P.] was packing her belongings, … []Appellant[] arrived. Appellant did not have a key to [E.P.'s] house nor did he have permission to be there. At some point thereafter, Appellant began attacking Luis[. H]e grabbed Luis from behind and stabbed him repeatedly[.] Luis sustained five stab wounds to the left back and two stab wounds to the left shoulder region. Luis eventually managed to escape to a nearby home of someone he knew; the resident there called an ambulance. Luis was transported to Temple Hospital where he was treated for multiple injuries including a collapsed lung. Luis was discharged from Temple Hospital on April 26, 2011.

Moments after attacking Luis, Appellant grabbed [E.P.] and pushed her against a wall[. H]e began hitting her in her face with a closed fist. Appellant then forced [E.P.] to walk to his brother's house by grabbing her and poking her with scissors. Once they arrived at [] Appellant's brother's house, they went into a bedroom[.] [] Appellant pushed the bed against the door, preventing [E.P.] from leaving. [] Appellant proceeded to curse at [E.P.] and hit her about her face and body. [] Appellant then threw [E.P.] on the floor and stabbed her in her forehead with the scissors. At some point, [E.P.], who was tired and in pain, fell asleep. When [E.P.] woke up, her clothes had been removed and Appellant was having sex with her. Appellant eventually drove [E.P.] to Einstein Hospital. [E.P.] was treated for multiple injuries including lacerations on her forehead and left palm. [E.P.] was subsequently transferred to Episcopal Hospital for a sexual assault evaluation. She was later discharged.

Appellant was arrested on April 23, 2011. He was charged [in two separate cases] with two counts [each] of Attempted Murder, … Aggravated Assault, … Possession of an Instrument of Crime, … Simple Assault, [and] … Recklessly Endangering Another Person,

[as well as] one count [each] of Rape, … Kidnapping, … Burglary, … Intimidation of Witnesses or Victims, … Conspiracy, … Sexual Assault, … Criminal Trespass, … Indecent Assault, … Unlawful Restraint, … Terroristic Threats, and … False Imprisonment on Bills of Information CP-51-CR-0008945-2011 and CP-51-CR-0008946-2011.

A jury trial commenced on February 27, 2014. Appellant was represented by Trevan Borum, Esquire. At trial, the Commonwealth presented as evidence the live testimony of (1) [E.P.], (2) Luis Ramon, (3) Ricardo Ramon, (4) Police Officer Mitchell, (5) Police Officer Moore, (6) Police Officer Bowe, (7) Police Officer Krawcyzk, (8) Detective King, (9) Detective Newbert, (10) Dr. Cernetich, and (11) Dr. Goldberg. The defense did not present any witnesses.

On March 7, 2014, the jury found Appellant guilty of the following charges on Bill of information CP-51-CR-0008945-2011: Attempted Murder, Aggravated Assault, and Possession of an Instrument of Crime. Appellant was found guilty of the following charges on Bill of Information CP-51-CR-0008946-2011: Rape, Kidnapping, and Sexual Assault. On June 12, 2014, this [c]ourt sentenced Appellant to an aggregate sentence of twenty-two and one-half (22½) to forty-five (45) years' imprisonment.

On June 18, 2014, defense counsel filed a Motion for Reconsideration of Sentence. On October 20, 2014, Appellant's Motion was denied by operation of law. On October 24, 2014, Appellant completed a Notice of Appeal form. Although timely, defense counsel did not file the Notice; thus, the appeal period lapsed.

On March 17, 2015, Appellant filed a *pro se* … []PCRA[] petition. J. Matthew Wolfe, Esquire, was subsequently appointed to represent the Appellant. [Attorney] Wolfe filed an Amended PCRA Petition on August 20, 2015; the basis of the petition was that [] Appellant was denied his rights to due process and effective assistance of counsel because trial counsel failed to file a direct appeal to the Superior Court despite Appellant's request to do so. Appellant requested that his appellate rights as well as his right to file post-sentence motions be reinstated *nunc pro tunc*. On April 1, 2016, this [c]ourt granted Appellant's PCRA Petition and reinstated Appellant's appellate rights.

On June 6, 2018, the Superior Court affirmed Appellant's judgment of sentence. [**See Commonwealth v. Cruz**, 193 A.3d

1049 (Pa. Super. 2018) (unpublished memorandum).] The Supreme Court denied Appellant's petition for allowance of appeal on November 21, 2018. [*See Commonwealth v. Cruz*, 197 A.3d 1178 (Pa. 2018).] On October 15, 2019, Appellant filed a *pro se* PCRA Petition. Lawrence J. O'Connor, Esquire[,] was appointed defense counsel and an amended PCRA Petition was filed on December 3, 2019. The Commonwealth filed its response on March 12, 2020. On December 2, 2020, this [c]ourt sent a [Pa.R.Crim.P.] 907 Notice of Intent to Dismiss Appellant's PCRA Petition.[1] On January 4, 2021, this [c]ourt denied Appellant's PCRA Petition. In the interim, on December 29, 2020, Appellant prematurely filed a Notice of Appeal and a [Pa.R.A.P.] 1925(b) [concise s]tatement [of errors complained of on appeal] unprompted. This [c]ourt believes Appellant filed the Notice of Appeal in response to the December 2, 2020[] Notice of Intent to Dismiss. In the interests of judicial economy, this [c]ourt will treat Appellant's Notice of Appeal as timely and properly filed from the January 4, 2021[] Order.[2]

---

[1] We note that, prior to the December 2, 2020 Rule 907 notice, this Court had remanded Appellant's case for the filing of such notice, as the court had not originally done so. While the court claims that it issued a Rule 907 notice on December 2, 2020, no such order appears on the docket in either of Appellant's two cases. Notwithstanding, Appellant does not raise any issue regarding the filing of the Rule 907 notice or claim that he did not receive it. Thus, any such arguments are waived for our review. *See Commonwealth v. Taylor*, 65 A.3d 462, 468 (Pa. Super. 2013) ("The failure to challenge the absence of a Rule 907 notice constitutes waiver.").

[2] Pennsylvania Rule of Appellate Procedure 905(a)(5) provides:

A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.

Pa.R.A.P. 905(a)(5). Pursuant to this rule, we agree with the PCRA court that it is appropriate to consider Appellant's premature appeal as having been filed on January 4, 2021, the date the court entered its final order dismissing his petition. We have corrected the captions accordingly.

PCRA Court Opinion (PCO), 6/4/21, at 1-4 (footnotes omitted). On June 4, 2021, the PCRA court filed a Rule 1925(a) opinion addressing the issues set forth in Appellant's Rule 1925(b) statement.

Herein, Appellant states four issues for our review:

1. Whether the PCRA court erred by dismissing the PCRA petition when clear and convincing evidence was presented to establish that trial counsel was ineffective for failing to investigate and present available defense evidence, failing to request and litigate a **Franks**[3] hearing, and refusing to allow [A]ppellant to testify in his own defense[?]

2. Whether the PCRA court erred by dismissing the PCRA petition when clear and convincing evidence was presented to establish a violation of [A]ppellant's Sixth Amendment right to effective representation of trial counsel, as well as the Commonwealth's failure to exercise due diligence in bringing [A]ppellant to trial in violation of his speedy trial rights[?]

3. Whether the PCRA court erred by dismissing [A]ppellant's PCRA petition when clear and convincing evidence was presented to establish the trial court issued an illegal sentence by imposing a punitive registration requirement of SORNA in violation of his due process rights that extended the length of the sentence beyond the statutory maximum[?]

4. Whether the PCRA court erred by failing to grant an evidentiary hearing[?]

Appellant's Brief at 8.

We begin by recognizing that "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Morales**, 701 A.2d 516,

---

[3] **See Franks v. Delaware**, 438 U.S. 154 (1978).

520 (Pa. 1997) (citing **Commonwealth v. Travaglia**, 661 A.2d 352, 356 n.4 (Pa. 1995)).

In Appellant's first issue, he raises several claims of trial counsel's ineffectiveness. Our Supreme Court has directed that,

> a PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [**Commonwealth v.**] **Colavita**, … 993 A.2d [874,] 886 [(Pa. 2010)] (citing **Strickland** [**v. Washington**, 466 U.S. 668 … (1984)]). In Pennsylvania, we have refined the **Strickland** performance and prejudice test into a three-part inquiry. **See** [**Commonwealth v.**] **Pierce**, [527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. **Commonwealth v. Ali**, … 10 A.3d 282, 291 (Pa. 2010). "If a petitioner fails to prove any of these prongs, his claim fails." **Commonwealth v. Simpson**, … 66 A.3d 253, 260 ([Pa.] 2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. **See Ali, supra**. Where matters of strategy and tactics are concerned, "a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Colavita**, … 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." **Commonwealth v. King**, … 57 A.3d 607, 613 ([Pa.] 2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a

probability that is sufficient to undermine confidence in the outcome of the proceeding.'" **Ali**, … 10 A.3d at 291 (quoting **Commonwealth v. Collins**, … 957 A.2d 237, 244 ([Pa.] 2008) (citing **Strickland**, 466 U.S. at 694….)).

**Commonwealth v. Spotz**, 84 A.3d 294, 311-12 (Pa. 2014).

Here, Appellant presents three distinct sub-claims of trial counsel's ineffectiveness. First, he contends that his counsel was ineffective for refusing to allow Appellant to testify, despite that Appellant "specifically communicated to trial counsel his decision to testify in his own defense." Appellant's Brief at 14. Appellant claims that "[c]ounsel offered no explanation to [A]ppellant as to the decision to not present his testimony as a witness." **Id.** He maintains that his underlying claim has arguable merit because counsel's conduct violated his Fifth Amendment right to testify in his own defense. **Id.** Appellant further avers that "[t]he reasonableness prong was satisfied because counsel failed to explain the decision to preclude [A]ppellant's testimony, and because the refusal to present [A]ppellant's testimony was not reasonably designed to advance the interests of [Appellant]." **Id.**

Second, Appellant claims that his trial counsel was ineffective for not filing a motion to suppress and seeking a **Franks** hearing. As our Supreme Court recognized in **Commonwealth v. Iannoccio**, 480 A.2d 966 (Pa. 1984):

> [**Franks**] held that, where a defendant makes a substantial preliminary showing that a false statement was **knowingly and deliberately, or with reckless disregard for the truth**, included by an affiant in his application for a search warrant and where the alleged false statement was necessary to a finding of probable cause, the Fourth Amendment requires that a hearing be held at defendant's request so that he might challenge the veracity and integrity of the warrant.

*Id.* at 974 n.4 (emphasis added). In this case, Appellant argues that

> [t]he Affidavit of Probable Cause contained information that was material to the finding of probable cause that was provided by the complaining witness and was patently false. Complainant [E.P.] lied to police during their investigation of the case in order to divert attention away from her commission of the assault on complainant Luis Ramon. Arguable merit was established based on counsel's failure to protect [A]ppellant's due process and Fourth Amendment rights. Counsel's failure to explain the tactics utilized satisfies the reasonableness standard, and both prongs of the ineffectiveness test were established.

Appellant's Brief at 14.

In his third sub-claim of ineffectiveness, Appellant insists that his trial counsel failed "to properly cross-examine complaining witness [E.P.]…." *Id.* at 15. According to Appellant, "[p]roper cross-examination would have revealed her corrupt motive to present perjured testimony, [and] her biases, prejudices and ulterior motives that relate directly to the issues in this case. Counsel failed to develop evidence that placed into question the credibility of the witness." *Id.* (citation omitted). These failures, Appellant contends, violated his right to confront the witnesses against him, and lacked any reasonable basis on the part of his counsel.

Appellant maintains that each of these three errors by counsel — *i.e.*, refusing to put Appellant on the stand, not seeking suppression and a ***Franks*** hearing, and not properly cross-examining E.P. — caused an adverse effect on his defense at his trial, and cumulatively caused him prejudice to a degree that a new trial is warranted.

We disagree. First, "[c]laims alleging ineffectiveness of counsel premised on allegations that trial counsel's actions interfered with an accused's right to testify require a defendant to prove either that 'counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.'" *Commonwealth v. Miller*, 987 A.2d 638, 660 (Pa. 2009) (quoting *Commonwealth v. Nieves*, 746 A.2d 1102, 1104 (Pa. 2000)).

Appellant has not met this burden of proof. While he contends that counsel refused to put him on the stand, the record belies this claim. As the PCRA court points out, Appellant was thoroughly colloquied about his decision not to testify. *See* PCO at 11-12 (quoting N.T. Trial, 3/5/14, at 74-76). Notably, the court informed Appellant that he had "an absolute right to testify in this matter," and Appellant expressly stated that he did not wish to do so. *Id.* (citation omitted). The court stressed that the decision was "totally up to" Appellant, and he stated that he understood. *Id.* (citation omitted). Appellant confirmed that no one had forced or threatened him to make the decision not to testify, and that he was doing so of his own free will. *Id.* (citation omitted). Finally, Appellant stated that he was satisfied with the representation of his counsel. *Id.* (citation omitted).

In rejecting Appellant's "speculative claim that he 'specifically communicated to trial counsel his decision to testify in his own defense[,]'" the PCRA court observed that he did not provide "any evidence in furtherance of this claim," especially considering the colloquy discussed *supra*. *Id.* at 12.

- 9 -

Thus, the court concluded that "Appellant's claim is speculative, undeveloped, and wholly unsubstantiated by the record." *Id.* We discern no error or abuse of discretion in the court's decision. Thus, no relief is due on Appellant's first sub-claim of ineffectiveness.

The PCRA court also rejected Appellant's second assertion that his counsel was ineffective for not filing a motion to suppress or seeking a *Franks* hearing. The court noted that "Appellant [did] not present any evidence or specific argument in furtherance" of this claim. *Id.* at 9. More specifically, the court explained:

> Appellant … claim[s] that the complaining witnesses, including [E.P.,] conspired to lie and, thus, … the affidavit of probable cause was "patently false[."] However, Appellant does not allege what evidence exists that would have impeached the affidavit, specifically how and in what capacity the complaining witness lied, nor does Appellant cite those specific facts he claims were fabricated based on false testimony. Accordingly, Appellant's claim should be dismissed because it is unsubstantiated, undeveloped, and without evidentiary support in the record.

*Id.* The court also stressed that "Appellant has failed to articulate on what basis trial counsel should have filed a *Franks* motion and why said motion would have succeeded" and, thus, he cannot prove "that the filing of one would have been strategically and tactically advantageous." *Id.* Consequently, the court maintained that it had properly dismissed Appellant's "speculative and spurious" ineffectiveness claim. *Id.* at 10.

On appeal, Appellant again offers no elaboration of what factual averments in the affidavit of probable cause were ostensibly untrue, or any discussion of how the affiant "knowingly and deliberately, or with reckless

- 10 -

disregard for the truth," included such untruths in the affidavit of probable cause. *Iannoccio*, 480 A.2d at 974 n.4. Thus, Appellant has failed to prove that a *Franks* hearing would have been granted, had counsel sought one.

Appellant also fails to discuss what other arguments counsel could have, or should have, raised in a motion to suppress. This Court has stated:

> When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. Citations to authorities must articulate the principles for which they are cited.
>
> This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.

*Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007). Consequently, we agree with the PCRA court that Appellant's second sub-claim of ineffectiveness is meritless and/or waived.

The same is true for Appellant's third ineffectiveness sub-claim, in which he contends that counsel ineffectively cross-examined E.P. Appellant offers no elaboration on what corrupt motives, biases, or prejudices about which his attorney failed to question E.P. While he also complains that counsel "failed to recall [E.P.] during the defense's case-in-chief, despite repeated requests by [A]ppellant[,]" he does not explain *why* he wanted to recall E.P., or how he was prejudiced by counsel's failure to do so. In sum, Appellant fails to meaningfully develop any argument regarding counsel's cross-examination of

- 11 -

E.P. or his failure to recall her as a defense witness that would establish that counsel acted ineffectively. Thus, Appellant's third sub-claim challenging counsel's representation is waived and does not warrant relief. *See Hardy*, *supra*.

Moving on to Appellant's second issue, he contends that he is entitled to relief because he established in his petition that his conviction resulted from "[a] violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(i). In support, Appellant cursorily reiterates that his right to testify in his own defense, and his right to effective assistance of counsel, were violated for the reasons set forth in his first issue. Because we found those claims undeveloped and/or meritless, he has failed to prove his constitutional rights were violated.

Additionally, Appellant contends that his constitutional right to a speedy trial was violated because he "waited over [three] years" between his arrest and trial. Appellant's Brief at 17. Appellant's claim implicates Pa.R.Crim.P. 600, which "has the dual purpose of both protecting a defendant's constitutional speedy trial rights and protecting society's right to effective prosecution of criminal cases." *Commonwealth v. Bradford*, 46 A.3d 693, 701 (Pa. 2012) (citations omitted). The *Bradford* Court continued:

> To protect the defendant's speedy trial rights, Rule 600 ultimately provides for the dismissal of charges if the Commonwealth fails to bring the defendant to trial within 365 days of the filing of the complaint (the "mechanical run date"), subject to certain exclusions for delays attributable to the defendant. Pa.R.Crim.P. 600(A)(3), (G). Conversely, to protect society's right to effective prosecution prior to dismissal of charges, [R]ule 600 requires the court to consider whether the [C]ommonwealth exercised due diligence, and whether the circumstances occasioning the delay of trial were beyond the Commonwealth's control. If the Commonwealth exercised due diligence and the delay was beyond the Commonwealth's control, "the motion to dismiss shall be denied." Pa.R.Crim.P. 600(G). The Commonwealth, however, has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence. As has been oft stated, [d]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort. "If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant." Pa.R.Crim.P. 600(G).

*Id.* at 701-02 (some internal citations and quotation marks omitted).

In the present case, we first observe that Appellant's counsel filed several Rule 600 motions seeking Appellant's release from incarceration and the dismissal of the charges against him. Appellant offers no explanation for why he did not, or could not, have challenged the trial court's rulings on these motions on direct appeal, thus waiving any post-conviction assertion that the court violated his constitutional right to a speedy trial. *See* 42 Pa.C.S. § 9543(a)(3) (stating that, to be eligible for PCRA relief, a petitioner must prove "[t]hat the allegation of error has not been previously litigated or waived"); 42 Pa.C.S. § 9544(b) ("For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial,

- 13 -

during unitary review, on appeal or in a prior state post[-]conviction proceeding.").

Moreover, we also deem waived Appellant's cursory attempt to frame this claim as a challenge to his trial counsel's representation. Aside from briefly stating that this "constitutional claim[] cannot be deemed waived by counsel's failure to raise it[,]" Appellant's offers no developed discussion of the three prongs for proving counsel's ineffectiveness. Appellant's Brief at 17. Instead, his entire argument in support of his Rule 600 claims is as follows:

> The Commonwealth's failure to exercise due diligence in bringing [A]ppellant to trial substantially prejudiced him and had an adverse effect on the outcome of the case. Appellant waited over 3 years before trial, well in excess of the 12 months required by law. Several continuances were considered by the court to be defense continuances, and the time was ruled excludable. However, [A]ppellant was not aware of the nature of these continuances and did not agree to them. More importantly, the Commonwealth consistently failed to exercise [its] due diligence because [it] failed to advise the court at each continuance of the mechanical and adjusted run dates. A defense continuance is certainly excludable time and extends the adjusted run date, but it does not relieve the Commonwealth of its responsibility to advise the court of the mechanical and adjusted time limits pursuant to [A]ppellant's speedy trial and Rule 600 rights. The Commonwealth's failure to exercise due diligence resulted in an egregious violation of [A]ppellant's right to a speedy trial. A reliable determination of guilt was not made at trial because the case should have been dismissed based on the violation of Appellant's speedy trial rights.

*Id.* at 17-18.

In rejecting Appellant's Rule 600 claim, the PCRA court explained that:

> [T]he record demonstrates that several Rule 600 motions were filed. Some of these motions sought release from pretrial incarceration; others sought dismissal of the charges against

- 14 -

Appellant. Appellant's [Rule] 1925(b) Statement does not clarify which motion is the subject of the instant appeal, nor does [he] specify how the [c]ourt erred. Appellant claims vaguely that he was not aware of the continuances requested by counsel, and that he would not have agreed to them as such. As our appellate courts have recognized, when a [d]efendant fails to adequately "identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues." *In re Estate of Daubert*, 757 A.2d 962, 963 (Pa. Super. 2000). "In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all." *Commonwealth v. Dowling*, 778 A.2d 683, 686-87 (Pa. Super. 2001). Since Appellant fails to adequately identify the issue sought to be pursued on appeal, this claim is waived.

PCO at 14.

Like in his Rule 1925(b) statement, Appellant does not specifically state in his appellate brief what defense continuances were requested and granted without his consent. He also does not explain exactly *how* the Commonwealth failed to exercise due diligence, aside from stating that it did not inform the court at each continuance of the mechanical and adjusted run dates. However, Appellant cites no case law to support that this purported failure by the Commonwealth would alone constitute a violation of its obligation to act with due diligence. More importantly, he does not explain how his trial counsel acted ineffectively in litigating the Rule 600 motions, and any challenge to the court's denial of those motions is waived due to Appellant's failure to raise it on direct appeal. Thus, we discern no error in the PCRA court's dismissal of Appellant's waived, undeveloped, and legally unsupported argument regarding Rule 600. *See Hardy*, *supra*.

- 15 -

In light of our disposition of Appellant's first two issues, we reject his argument — raised in his fourth issue on appeal — that an evidentiary hearing is warranted on his ineffectiveness or Rule 600 claims. *See* Appellant's Brief at 19-20. However, for the following reasons, we conclude that further proceedings are required on Appellant's third issue, in which he argues that the court imposed an illegal sentence by mandating that Appellant register as a sex offender for life under Tier III of SORNA. In support of his claim, Appellant explains that,

> [s]ubsequent to the imposition of [his] sentence, the Pennsylvania Supreme Court deemed SORNA unconstitutional as applied to certain registrants in *Commonwealth v. Muniz*[,] 164 A.[3]d 1198 ([Pa.] 2017). The [C]ourt determined that [SORNA] was indeed punitive in nature. As applied to [A]ppellant…, the imposition of the Tier [III] SORNA registration requirement incurred upon him a punitive sanction for life, well in excess of the combined mandatory sentences for all the crimes for which he was convicted and sentenced. Effectively, [A]ppellant … was sentenced to some form of punishment for the term of his life. Because a life sentence is greater than the statutory maximum for all the combined sentences applied to him, the sentence imposed must be deemed illegal.

Appellant's Brief at 18-19.

Appellant also insists that "the SORNA registration [requirement] violated [his] due process rights based on the Act's declaration that registrants are highly likely to repeat their behavior and are dangerous." *Id.* at 19. He avers:

> The Act does not provide [A]ppellant any opportunity to prove that he is not highly likely to repeat the offense or similar behaviors, and that issue was never established during trial. As such, [A]ppellant was never provided the opportunity to defend himself on this issue, which amounts to a denial of his due process rights.

> Further, protection of his reputation is a recognized fundamental right under the Pennsylvania Constitution. Effectively, SORNA registration denied [A]ppellant his right to reputation through the presumption that he is dangerous and a high risk to repeat sexually criminal behavior. Without any evidence to support this presumption, [A]ppellant was effectively denied his fundamental right of reputation as recognized by the Pennsylvania Constitution. Appellant … was entitled to relief based on the imposition of an illegal sentence, and the PCRA court erred by dismissing the petition.

*Id.*

Again, Appellant fails to cite or discuss any legal authority to support his arguments. Nevertheless, his legality-of-sentencing claim cannot be waived and, for the following reasons, we conclude that it warrants relief.

In **Muniz**, our Supreme Court held that SORNA is punitive in nature and that its retroactive application to defendants whose crimes were committed prior to its enactment violates the *ex post facto* clause of the United States and Pennsylvania Constitutions. **See Muniz**, 164 A.3d at 1219-23. Following **Muniz**, and **Commonwealth v. Butler**, 173 A.3d 1212 (Pa. Super. 2017), *rev'd*, 226 A.3d 972 (Pa. 2020), the Pennsylvania General Assembly enacted legislation to amend SORNA. **See** Act of Feb. 21, 2018, P.L. 27, No. 10 (Act 10). Act 10 amended several provisions of SORNA, and also added several new sections found at 42 Pa.C.S. §§ 9799.42, 9799.51-9799.75. In addition, the Governor of Pennsylvania signed new legislation striking the Act 10 amendments and reenacting several SORNA provisions, effective June 12, 2018. **See** Act of June 12, 2018, P.L. 1952, No. 29 (Act 29). Through Act 10, as amended in Act 29 (collectively, SORNA II), the General Assembly split

SORNA's former Subchapter H into a Revised Subchapter H and Subchapter I. Subchapter I addresses sexual offenders who, like Appellant, committed an offense on or after April 22, 1996, but before December 20, 2012. **See** 42 Pa.C.S. §§ 9799.51-9799.75. Subchapter I contains less stringent reporting requirements than Revised Subchapter H, which applies to offenders who committed an offense on or after December 20, 2012. **See** 42 Pa.C.S. §§ 9799.10-9799.42.

In the case *sub judice*, Appellant committed his offenses in April of 2011, before SORNA became effective on December 20, 2012. Thus, under the rationale of **Muniz**, applying SORNA to Appellant seemingly violates the *ex post facto* clause of the United States Constitution, rendering his current sentence illegal. The PCRA court, however, concluded that **Muniz** is distinguishable for the reasons set forth by this Court in **Commonwealth v. Haughwout**, 198 A.3d 403 (Pa. Super. 2018), *appeal denied*, 207 A.3d 905 (Pa. 2019). There, Haughwout was convicted of indecent assault in 2002 and was subject to lifetime registration requirements under Megan's Law I. **Haughwout**, 198 A.3d at 404. In 2015, he pled guilty to failing to comply with his registration requirements and was sentenced to a term of incarceration. **Id.** On appeal, Haughwout argued that this Court should vacate his conviction for failing to comply with his registration requirements, insisting that **Muniz** "rendered SORNA unconstitutional in its entirety and that prior law under which Appellant was deemed a lifetime registrant cannot be revived." **Id.** at 405. In rejecting Haughwout's argument, we stressed that

"the ***Muniz*** [C]ourt did not find SORNA unenforceable in all contexts; rather the Supreme Court held that SORNA was unconstitutional *as applied* to Muniz because it changed his registration requirement from ten years to lifetime registration, and thus, increased his punishment for indecent assault after he committed the offense." ***Id.*** (emphasis in original). Because Haughwout "was subject to lifetime registration upon his initial conviction and the enactment of SORNA did not change his reporting period[,]" we found that his case was distinguishable from ***Muniz*** and his sentence was legal. ***Id.***

> Analogizing ***Haughwout*** to the present case, the PCRA court explains:

> In this case, Appellant's reliance on … ***Muniz*** … is misplaced because, similar to … ***Haughwout***, Appellant was subject, at the time of his conviction and sentencing, to lifetime registration. Accordingly, neither the enactment of SORNA nor the Supreme Court's holding in ***Muniz*** affect Appellant's lifetime registration requirement, nor do they change Appellant's punishment *ex post facto* because Appellant was already subject to lifetime registration under his initial conviction and sentencing. Unlike the defendant in … ***Muniz***…, in this case SORNA did not in any capacity change the requirements of Appellant's sexual offender registration. Therefore, similar to the holding in … ***Haughwout***…, because SORNA did not change Appellant's lifetime registration requirement, the Pennsylvania Supreme Court's holding in ***Muniz*** is inapplicable to the present matter and Appellant's claim should be dismissed.

PCO at 18-19.

We disagree with the PCRA court's conclusion. Initially, there appears to be a split between ***Haughwout*** and other cases by this Court holding that SORNA's retroactive application is unconstitutional even though it does not change the defendant's prior registration requirements. ***See, e.g.***,

- 19 -

*Commonwealth v. Horning*, 193 A.3d 411, 416-17 (Pa. Super. 2018) (holding that SVP registration under SORNA violated *Muniz* even though the defendant would have been required to register for his lifetime under Megan's Law II; although the defendant's registration period remained the same, SORNA "augment[ed] the registration requirements…, which included quarterly in-person reporting and the posting of [ ] personal information on the Pennsylvania State Police website"), *appeal denied*, 204 A.3d 370 (Pa. 2019); *Commonwealth v. Moore*, 2018 WL 4610153 (Pa. Super. 2018) (unpublished memorandum) (relying on *Horning* to reach same result).

Moreover, our rationale in *Haughwout* has been undercut by our Supreme Court's more recent decision in *Commonwealth v. Santana*, 266 A.3d 528 (Pa. 2021). There, Santana had committed rape in New York in 1983, and was subject to a lifetime registration requirement in New York after it passed its "Sex Offender Registration Act" (SORA) in 1995. *Id.* at 530. When Santana moved to Pennsylvania in 2015, he was automatically subject to lifetime registration requirements under SORNA. *Id.* Santana was subsequently arrested and pled guilty to failing to comply with his SORNA registration requirements. *Id.* at 531. On appeal, Santana argued that applying SORNA to him constituted an *ex post facto* violation under the rationale of *Muniz*. The Commonwealth, however, insisted that *Muniz* did not apply "because Santana did not face an increase in punishment when he moved from New York to Pennsylvania." *Id.* at 535. It also argued "that *Muniz* was not an all-encompassing constitutional ruling. Rather, … this Court

held that SORNA was only unconstitutional when its after-the-fact application increased an offender's reporting and registration obligations from ten years to a lifetime. Only then would SORNA function as an increase in punishment." *Id.*

The *Santana* Court rejected the Commonwealth's position, stressing that

> [t]he question is not whether SORA and SORNA impose the same or different registration periods. The analysis does not examine whether a new resident's crossing of Pennsylvania's borders actually increased the length of Santana's punishment. It does not even matter where Santana committed the triggering offense. For present purposes, what matters most is *when* that crime occurred.

*Id.* at 536 (emphasis in original). The Court further clarified that its statement of *ex post facto* law in *Muniz* "was incomplete[,]" as "[t]he United States Constitution does not require a defendant to prove that he, in fact, was disadvantaged by the retroactively applied law." *Id.*; *see also California Dept. of Corrections v. Morales*, 514 U.S. 499 (1995) ("[T]he focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' … but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable."). The Court then distilled the *ex post facto* analysis to the following questions: "First, a court must ask when the initial offense was committed. Second, the court must ask whether the challenged law was enacted after the occurrence of the triggering offense and was then applied retroactively. If so, the final question is whether that retroactive law is

punitive **or** increases the penalty for the existing crime." **Id.** at 537 (emphasis added).

Because Santana committed his initial offense in 1983, SORNA was clearly being applied to him retroactively, and SORNA was declared punitive in **Muniz**, "SORNA's application to Santana [was] an *ex post facto* law." **Id.** at 539. The Court clarified that **Muniz** should not be read as holding that SORNA is unconstitutional only **as applied** to Muniz or similarly situated defendants.[4] The Court explained that, instead, its "*ex post facto* analysis [in **Muniz**] was based upon an objective review of SORNA's statutory elements. We analyzed those elements for the impact that they had on all Tier III offenders. Nothing about our decision implies that the statute was unconstitutional only as to Muniz himself, or based upon his unique circumstances." **Id.**

Here, as in **Muniz** and **Santana**, Appellant committed his crime pre-SORNA, and that statute was clearly applied to him retroactively. As **Santana** clarifies, **Muniz** held that SORNA is punitive and cannot be retroactively applied to someone whose crime was committed prior to SORNA's effective date. Thus, it is irrelevant whether Appellant's length of registration increased with the passage of SORNA; its application to him constitutes an *ex post facto*

---

[4] Muniz was convicted of indecent assault in 2007, at which time his offenses would require him to register as a sex offender for ten years under then-effective Megan's Law III. **See Muniz**, 164 A.3d at 1193. Muniz absconded before his sentencing hearing and was not arrested and sentenced until 2014. At that point, Megan's Law III had been replaced by SORNA, which subjected Muniz to lifetime registration as a sex offender.

law that renders his registration requirements under SORNA illegal. Accordingly, we vacate Appellant's registration requirements under SORNA and remand for the court to impose, and provide proper notification of, the applicable registration requirements under Subchapter I of SORNA II.[5]

Order vacated. SORNA registration requirements vacated. Case remanded for imposition and notification of SORNA II registration requirements. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/24/2022

---

[5] Our Supreme Court has held that Subchapter I of SORNA II is not punitive and, therefore, it may be retroactively applied to Appellant. ***See Commonwealth v. Lacombe***, 234 A.3d 602, 627 (Pa. 2020).